WINFIELD P. DUNN *et al.*

*v.*

GEORGE W. CRICHFIELD.

*Opinion filed February 21, 1905.*

1. INSTRUCTIONS—*a specific objection to instruction cannot be first made in Supreme Court.* A specific objection to an instruction, not made in the trial court nor urged on motion for new trial nor raised and argued in the Appellate Court, cannot be urged in the Supreme Court.

2. SAME—*an instruction summarizing evidence need not include evidence for both sides.* An instruction, based upon the particular hypothesis or theory contended for by one party, which summarizes the elements essential to a recovery upon such theory without omitting any essential matter, is not erroneous, in that it fails to embody the evidence upon the other side which tends to establish an antagonistic theory.

3. TRIAL—*construction of written contract is not for the jury.* The construction of a written contract is a matter for the court, and is not within the province of the jury.

4. CONTRACTS—*right of party to terminate contract of employment.* Upon refusal of an employer to make payments to an employee of his portion of the net profits in accordance with the terms of the contract, the employee has a right to terminate the contract, abandon the service and recover such sum as is due him under the contract for the time of his actual employment.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This is an action of assumpsit, begun in the Superior Court of Cook county on November 2, 1892, by the appellee against the appellants, Winfield P. Dunn, Samuel D. McNeal, Will H. Pettengill, and Watson Trantor, composing the firm of W. P. Dunn & Co. The trial resulted in verdict and judgment in favor of appellee for $2000.00. Motions for new trial were filed both by appellants and by appellee. Appellee,

however, withdrew, by leave of court, his motion for new trial, and the motion for new trial made by appellants was overruled. Upon appeal to the Appellate Court the judg-ment of the trial court has been affirmed, and the present appeal is prosecuted from such judgment of affirmance.

The contract between the parties, out of which this suit has grown, was made on December 17, 1889, between W. P. Dunn & Co., proprietors of the weekly journal, *The Dry Goods Reporter and Wholesale Price List,* as parties of the first part, and George W. Crichfield, as party of the second part, which said contract was in words and figures follow- · ing, to-wit:

"*First*—The said W. P. Dunn & Co., parties of the first part, have this day employed and do hereby employ said George W. Crichfield, as editorial manager of said journal for the period of one year from the date hereof, and hereby agree to pay him for his services as such editorial manager the sum of $20.00 per week, payable weekly, and one-half of the entire net profits of the said journal for said year.

"*Second*—Said W. P. Dunn & Co. as a firm hereby guarantee, and the individual members thereof hereby jointly and severally guarantee, to the said George W. Crichfield that his share of the net profits for the said year shall not be less than $500.00, and they will at the end of said year pay such a sum of money to said Crichfield as, added to such share of profits as he may receive for said year, will equal said sum of $500.00. If one-half of the net profits at the end of the year shall exceed $500.00, said Crichfield is to have such excess.

"*Third*—Said W. P. Dunn & Co. hereby further agree to pay to said Crichfield quarterly during said year, besides the salary specified above, if he shall desire it, a sum not to exceed seventy-five per cent of said Crichfield's share of the profits under this agreement, estimated for the respective quarters. Said profits for such quarter to be approximated by the parties. But at the end of the year, whatever sum shall have been drawn by said Crichfield from his share of

the profits shall be deducted from his half of the net profits of said journal upon a settlement at the end of the year.

"*Fourth*—Said W. P. Dunn & Co. further agree to print and publish said journal and to assume all financial responsibility with reference to the same. Said Crichfield shall in no way be considered a partner in said business.

"*Fifth*—In consideration of the above, said party of the second part, George W. Crichfield, agrees to accept, and hereby does accept, said employment for said period of one year, and further agrees to devote his entire time and energy in his position as editorial manager to the furtherance of the interests of said journal.

"*Sixth*—It is further agreed by both parties that if in the exigencies of the business it should be necessary for said Crichfield to go from Chicago on business trips with reference to the paper, all the expenses of said Crichfield upon said trips shall be considered as part of the expenses for conducting said paper, and shall be paid to said Crichfield by said W. P. Dunn & Co.

"*Seventh*—It is further agreed by the parties hereto that, if at the end of the year aforesaid the net profits of the journal shall reach the sum of $2500.00, this contract shall be renewed and extended by both parties for the period of not less than one year. It is expressly agreed that this provision is part of the consideration for this contract."

An amended declaration was filed on December 4, 1894, consisting of two counts, the first of which averred that appellee accepted employment under said contract and continued therein until June 1, 1892, when, under its terms, and by agreement, it was terminated; and the second of which averred that appellee continued in such employment under the agreement until June 1, 1892, when it was terminated with the knowledge and by the consent of appellants.

On June 28, 1895, amendments to the amended declaration, and an additional count, were filed. The amendments averred that on June 1, 1892, the contract was terminated by

agreement, and the employment of appellee then and there ceased; that appellants agreed to pay appellee whatever sums might be due him under the terms of the contract to June 1, 1892; and that, at that date, when the contract was terminated, there was due appellee a large sum of money, to-wit, $20,000.00. The additional count averred that the appellee accepted employment and continued therein for one year until December 17, 1890, and that, under the terms of the contract, he continued in such employment for a period of not less than one year thereafter, to-wit, until June 1, 1892, at which time the parties agreed to terminate said contract, and appellants agreed with appellee that all money due to him until June 1, 1892, should be paid him, and that he ceased to be employed by them on that date, and fully performed all the conditions of the contract, but appellants failed to perform, etc. Pleas were filed on December 10, 1895, of the general issue, and set-off. The plea of set-off averred that on May 11, 1892, the appellee violated said contract by leaving the employment of appellants, and that appellants were thereby put to large expense, etc. An additional count was filed on July 7, 1896, wherein, after averring that appellee accepted employment under the contract, it is alleged that, at the expiration of the first year, the contract was renewed and extended for a period of not less than one year, and that appellee thereafter continued in the employ of appellants for a period of not less than one year, until June 1, 1892; that appellants failed to perform said contract, and refused to pay appellee from time to time prior to June 1, 1892, the moneys due him under said contract, by reason whereof appellee was obliged to and did leave the employ of appellants on June 1, 1892, and that on that date there was due him under the contract a large sum of money, to-wit, $20,000.00.

DUNN & HAYES, (S. P. SHOPE, of counsel,) for appellants.

WINSTON, PAYNE & STRAWN, (JOHN BARTON PAYNE, of counsel,) for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—As we understand the evidence in this case and the respective contentions of the counsel herein, appellee was paid his salary of $20.00 per week under the terms of the contract during the time he was in the service of appellants from December 17, 1889, or January 1, 1890, until June 1, 1892, when such service ceased; but the difference between the parties has reference to the question whether or not appellee was paid his share of the net profits of the business during the time in question. By the terms of the contract appellee was to receive one-half of such net profits.

At the end of the first year, and in January, 1891, appellant, Dunn, handed the appellee a memorandum in Dunn's handwriting showing the profits of that year to have been $2597.45, and desired appellee to renew the contract. At the end of the second year, and on January 2, 1892, Dunn handed appellee a memorandum in Dunn's handwriting, showing the profits for the year 1891 to be $6817.79. According to the testimony of appellee he was unable to obtain payment from Dunn & Co., and accordingly on May 11, 1892, he gave appellants notice that he would terminate the contract, and demanded an accounting and settlement of what was due him. In May, 1892, Dunn handed to appellee a statement in his handwriting, showing the business for 1892, based upon the earnings up to that time, in which the profits for 1892 were estimated at $9557.89. The net profits for the whole of the year 1892 being estimated at $9557.89, appellee claimed that he was entitled to five-twelfths of this amount for the five months from January 1, 1892, to June 1, 1892, such five-twelfths being the sum of $3982.45. Appellee contends that he only received, on account of net profits for the time he was in the service of the appellants, the sum of $1489.81.

Appellee's claim on the trial was that the net profits for the year 1890 were $2597.45, for the year 1891, $6817.79, and for the five months from January 1, 1892, to June 1, 1892, $3982.45, making the total net profits, by adding these three sums together, the sum of $13,397.69; that one-half of this sum, to-wit, $6698.84, was his share of the net profits, and that, after deducting the sum of $1489.81, which had been paid to him, from the sum of $6698.84, there was due to him the sum of $5209.03. The latter sum of $5209.03 was the amount which the appellee sought to recover upon the trial below. The jury, however, took the view that there had been a settlement between the parties for the years 1890 and 1891, and that appellee was only entitled to half of the net profits, earned in the business during the five months from January 1, 1892, to June 1, 1892, that is to say, that appellee was entitled to one-half of the sum of $3982.45, to-wit, $1991.22. The sum of $1991.22, with five per cent interest, would amount to more than $2000.00, which was the amount of the verdict rendered by the jury. The appellee was thus awarded, as the result of the trial, more than $3000.00 less than he claimed to be due to him.

The material question of fact was whether the profits for the year 1892 were $9557.89, as claimed by appellee, and as indicated upon the memorandum in the handwriting of Dunn, which was handed to appellee, or whether such profits were only $1984.05, as claimed by appellants. Five-twelfths of the latter amount would be $826.70, and, as we understand the position of appellants, it is that, if appellee is entitled to anything, it is half of the last named sum, to-wit, $413.35. The question of fact, about which the parties thus differ, has been decided by the jury against both of them, and in such a way that appellee is willing to abide by the verdict, to-wit, $2000.00. The judgment of the trial court in favor of appellee, and the judgment of the Appellate Court affirming the same, are conclusive upon us, so far as these questions of fact are concerned. There is evidence tending

to sustain the finding of the jury, and we are not disposed to disturb it if no error of law was committed by the trial court.

*Second*—Appellants contend that the trial court erred in giving the instructions, which it did give in behalf of the appellee. As, however, the argument in behalf of the appellants calls our attention specifically only to two of these instructions, we will only notice what is said in reference to them. Counsel for the appellants claim that the third instruction, given for the appellee, was erroneous.

The third instruction thus objected to told the jury that, if they believed from the evidence that any person who had testified in the case had knowingly and willfully testified falsely as to any matter or thing, upon the existence or non-existence of which the right of appellee to recover, or the right of appellants to escape liability, depended, they were at liberty to entirely disregard the testimony of such persons, "except in so far as it may have been corroborated by evidence in the case, which you believe to be true, or by circumstances shown by evidence in the case, which you believe to be true." This instruction is not precisely the same as the instruction condemned by this court in the recent case of *Chicago and Alton Railroad Co.* v. *Kelly,* 210 Ill. 449. If it be said, however, that its phraseology is such as to bring it within the condemnation of the views expressed in that case, its defectiveness cannot be here urged as error, for the reason that the objection, now made to it, which is the same as the objection made to the instruction in the *Kelly case,* was not called to the attention of the trial court, nor to the attention of the Appellate Court, when the case was before those courts. We have been furnished with copies of the briefs, filed by the appellants in the Appellate Court, and find no such point made by them in the Appellate Court.

In the *Kelly case* an instruction, permitting the jury to disregard the entire testimony of a witness who, they believe, has willfully sworn falsely to a material matter, "except in so far as it may have been corroborated by other credible

evidence which they do believe," etc., was held to be errone-
ous in requiring the credible evidence to be believed. In the
case at bar, the only reference to the third instruction, given
for appellee, in the argument of counsel before the Appellate
Court is the statement, that that instruction and three others
"are abstractions tending to confuse as a series and divert
the jury from an intelligent consideration of all the evidence."

The point, now made in opposition to the instruction,
was not embraced in the criticism thus made upon it in the
Appellate Court. Where a question is not raised upon the
trial of a case, or urged on the motion for new trial, or
assigned as error in the Appellate Court, such question is
waived, so far as this court is concerned; and even where
errors are assigned in the Appellate Court, which would cover
supposed erroneous rulings of the trial court, but are not
argued or brought to the attention of the Appellate Court,
they will be held to have been waived, and abandoned, and
cannot be raised in this court for the first time. (*Chicago
and Alton Railroad Co.* v. *American Strawboard Co.* 190
Ill. 268; *Central Union Building Co.* v. *Kolander,* 212 id.
27; *Strodtmann* v. *County of Menard,* 158 id. 155; *Ennes-
ser* v. *Hudek,* 169 id. 494).

The sixth instruction, given on behalf of the appellee, is
also objected to as erroneous. The alleged ground of the
objection is, that this instruction attempts to summarize the
evidence, upon which recovery may be had, and does not in-
clude the evidence of both sides. It is true, as a general rule,
that an instruction is vicious, which singles out particular
items of proof relied upon by one party, and gives them to
the jury in the form of an instruction; but an instruction
may be based upon the particular hypothesis or theory con-
tended for by one party, and may summarize the elements,
necessary to a recovery upon that theory, without omitting
any essential matter. "The rule, that an instruction is erro-
neous, which sums up all or a part of the facts, which the
evidence tends to prove on one side, and omits the facts on

the other side, does not apply to an instruction, which merely fails to embody evidence, tending to establish a distinct antagonistic theory." (*Chicago and Alton Railroad Co.* v. *Harrington,* 192 Ill. 9). "All the law requires is that an instruction, based upon some particular hypothesis warranted by the evidence, which undertakes to summarize the elements · in the cause essential to a recovery upon that theory, must not omit any essential matter." (*Terre Haute and Indianapolis Railroad Co.* v. *Eggmann,* 159 Ill. 550; *City of Chicago* v. *Schmidt,* 107 id. 186; *Springfield Railway Co.* v. *Hoeffner,* 175 id. 634; *Hanchett* v. *Kimbark,* 118 id. 121.) The instruction here complained of simply embodies the elements necessary to authorize a recovery. But if the instruction is subject to the objection urged against it, it could not possibly have done the appellants any harm, as the jury refused to follow it, and adopted an entirely different theory in regard to the amount found to be due to appellee. The instruction tended to support the claim of the appellee that there was due to him the sum of $5209.03, as above specified, that is to say, that appellee was entitled to an interest in the net profits for the years 1890 and 1891. The jury have decided, as is above stated, that appellee was only entitled to an interest in the profits for the year 1892 alone.

Complaint is also made that the trial court erred in refusing certain instructions asked by the appellants. These instructions were properly refused, because some of them left it to the jury to construe the meaning of the written contract between the parties, whereas the construction of such contract was a matter for the court, and not for the jury; some of them were instructions, whose substance was embodied in instructions already given, and, therefore, it was unnecessary to repeat them; some of the instructions so refused authorized the jury to assess damages in behalf of the appellants under the plea of set-off, whereas there was no evidence whatever in the record to sustain any claim for damages under said plea; and some of these instructions, as is said

by the Appellate Court in their opinion deciding this case, "should have been refused, because they ignore plaintiff's claim for recovery for balances alleged to be due him for the years 1890 and 1891."

There was evidence in the record, tending to show that the appellants declined to pay to appellee his share of the net profits in compliance with demands made by him therefor. This being true, the appellee had a right to terminate the contract, as he did, in May or June, 1892. There is also evidence, tending to show that the contract was so terminated by agreement between appellee and appellants. That is to say, the evidence tends to show that, when appellee gave appellants notice that he intended to quit their service, they did not object to his retiring from their service, but immediately engaged another man to take his place, and appellee, with their consent and at their instance, remained with them long enough to instruct the new employe in the duties of the place, which appellee was vacating. In view of these facts the fifth instruction given for the appellee stated the law correctly. That instruction told the jury that, if they believed from the evidence that the services claimed and sued for in this suit were rendered under the contract, as set forth in the plaintiff's declaration, and that said defendants failed to carry out their part of said contract, and make the payments due to the plaintiff as set forth in said contract, then, upon such failure, the plaintiff had a right to abandon their service and collect of the defendants such sums as were due him under said contract for the time of the actual employment under the terms of the contract. (*Carney* v. *Newberry,* 24 Ill. 203; *Webster* v. *Enfield,* 5 Gilm. 298).

The jury were also instructed by the court that appellee would be entitled to recover, if they should find from the evidence that the termination of the contract was by agreement of the parties, or without fault on the part of appellee.

After a careful examination of the record, we are satisfied that the judgments of the lower courts have done justice

between the parties, and that no error was committed, which would justify us in reversing such judgments.

Accordingly, the judgment of the Appellate Court, affirming the judgment of the Superior Court of Cook county, is affirmed.