## Standard Manufacturing Company v. A. E. Slaughter.

1. RESCISSION—*what not ground for.* Where the contract in question provides that a party thereto shall furnish a bond, the furnishing of an objectionable bond is not ground for rescission, if, promptly upon notice, a sufficient bond is supplied pursuant to contract.

2. INSTRUCTIONS—*must not submit questions of law to jury.* Instructions must not submit questions of law for the determination of the jury.

Action of assumpsit. Appeal from the Circuit Court of Christian County; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the May term, 1905. Reversed and remanded. Opinion filed October 9, 1905.

GEORGE T. WALLACE, for appellant; JOHN E. HOGAN, of counsel.

J. C. & W. B. McBRIDE, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is a suit in assumpsit on a contract or order for goods alleged to have been sold by appellant to appellee. A trial was had in the Circuit Court by jury, and a verdict and judgment rendered for the defendant, to reverse which it appeals.

Appellant is a corporation engaged in the manufacture of flavoring extracts, toilet preparations, etc., at Decatur, Illinois. The defendant is a dealer in general merchandise at Stonington in Christian county. The evidence discloses that appellant's salesman, one Frambes, called at the store of appellee on February 24, 1904, and after some conversation with Thomas Slaughter, the husband and agent of appellee, induced him to sign appellee's name to an order or contract whereby she purchased and ordered shipped to her, certain goods therein specified, to the amount of $173, which contract or order is the basis of this suit.

The order in question expressly provides that the purchaser is not to countermand the same, and immediately

above appellee's signature appear the words, "Please ship the goods herein described on the terms and conditions herein stated, all of which we have carefully read and find complete and satisfactory. We understand that an agreement to be binding must be noted hereon." The order also contains the following clause: "The Standard Manufacturing Co. are to send a guarantee bond to the Exchange Bank of Stonington, guaranteeing A. E. Slaughter a profit of $57.66 a year for three years, or repurchase goods on hand at purchase price as above specified."

Upon receipt of said order, appellant notified appellee of its acceptance of the same, also shipped the goods as directed and sent to the Exchange Bank of Stonington a guarantee bond, which through inadvertence was neither signed nor acknowledged by appellant. On March 6th appellee notified appellant by letter that she had decided not to accept the goods for the reason that the bond sent had been pronounced by the bank as "not good," and that she held the goods subject to appellant's order. The following day appellant replied to this letter inquiring why the bond had been pronounced insufficient, and stating that if anything was wrong with it, appellant was willing to make it good; and at the same time wrote to the bank asking what was the matter with the bond. Upon receipt of a reply from the bank enclosing the bond, appellant at once executed a proper bond and sent the same to the bank with the explanation that the failure properly to execute and acknowledge the first bond was occasioned by an oversight.

On April 1st appellant wrote to appellee requesting a settlement. Appellee replied that inasmuch as appellant had failed to furnish a bond as required by the contract, she refused to be bound by the same. Appellant thereupon brought suit for the purchase price of the goods. The evidence introduced by appellee tends to show that during the conversation preliminary to the execution of the order, appellant's salesman Frambes told Slaughter that the goods he had for sale were to be left on consignment only and

were not to be paid for until after they were sold by appellee, and that such as were sold were to be settled for at stipulated periods; that Slaughter, acting for appellee, agreed to take the goods upon the terms proposed, and that thereupon Frambes produced a written contract which he requested Slaughter to sign; that Slaughter not having his spectacles at hand, requested Frambes to read the contract to him, and that in the reading thereof Frambes omitted or failed to read that part relating to the giving of notes and payment; that thereupon Slaughter executed the contract, relying upon the statement of Frambes that the same was in accordance with the terms stated in their conversation, and as read by him. The testimony of several other witnesses called by appellee, tended to corroborate in part, Slaughter's version of the transaction.

Frambes, appellant's salesman, testified that at the time of the execution of the contract there was no one near enough to hear what took place between him and Slaughter; that he went over the contract with Slaughter, who fully understood it; that he did not misread or misrepresent any portion of said contract; that he told Slaughter nothing in regard to the terms of payment except as specified in the contract; that he made no objection to Slaughter himself reading the contract, or having anyone else read the same for him.

Appellee insists that she not only had the right to rescind the contract because her signature was procured by fraud on the part of Frambes, but for the further reason that the first bond tendered did not comply with the contract and was never approved by the Exchange Bank of Stonington. As the judgment must be reversed and the cause remanded for errors in instructions, and may be retried, we will not discuss nor determine the question as to whether the greater weight of the evidence warranted the jury in finding that the execution of the contract was procured by fraud.

The fourth instruction given at the request of appellee informed the jury that if the bond required by the con-

tract to be given, was sent by the plaintiff to the bank, and that it was not of the character, or it did not fulfill the guarantee, as required and provided by said contract, and that the defendant did not accept the goods in question under the contract, their verdict should be for the defendant.

Plaintiff's fifth instruction is to the effect that if the plaintiff sent a paper to the bank purporting to be a bond, but which was not in fact such a bond as was required by the contract, the defendant upon ascertaining that fact had the right to refuse to receive the goods, and was not in this action liable for the value thereof.

Appellee's sixth instruction, in substance, tells the jury that if plaintiff agreed by said contract to send to the bank a bond which was to be approved by one Housley (whom the evidence discloses was one of the proprietors of the bank), or any other person, and that such bond had not been approved by such persons, and that defendant had refused to receive the goods, then plaintiff could not recover and the verdict should be for the defendant.

Under the facts as disclosed by the record, although the jury may have found that the execution of the contract was not unfairly obtained, they, nevertheless, could only have found for the defendant. Such is not the law. These instructions are palpably erroneous. Their prejudicial effect was and could not be minimized by the other instructions read to the jury. In the absence of any specified period in the contract, appellant was entitled to a reasonable time within which to furnish a bond. Although the first bond was defective through inadvertence or mistake, appellant without delay furnished another substantially in accordance with the requirements of the contract. It is not shown that the sureties thereon are not ample. There is nothing in the contract which requires the bond to be satisfactory to or be approved by any particular person or persons. The evident intention of the parties was that it was to be left with the bank in escrow only. If the bond was of such character that it should have been approved

by or be satisfactory to a reasonable person, it was suffi-. cient under the circumstances.

The sixth instruction requires the jury to construe the contract and is bad for that reason. The construction of a written contract is a matter of law for the court and is not within the province of the jury. Dunn v. Crichfield, 214 Ill. 292.

Appellant's second refused instruction states in effect that if the plaintiff in the first instance inadvertently failed to send to the bank the kind and character of bond contemplated by the agreement, but as soon as such was made known to it, rectified the error, then under such circumstances the defendant had no right to declare a rescission of the contract because of such mistake. This instruction substantially states the law correctly and should have been given.

For the errors indicated, which were both prejudicial and vital, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*