(No. 12297.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH M. MOSES, Plaintiff in Error.

*Opinion filed June 18, 1919.*

1. CRIMINAL LAW—*when a conviction for conspiracy to obtain property by false pretenses is authorized.* A conviction for conspiracy to obtain a check by false pretenses is authorized even though there were also threats and intimidation by the defendants, where such threats and intimidation would have been ineffectual had it not been for the false pretenses made by the defendants with respect to their authority to represent a branch of State government.

2. SAME—*giving numerous instructions on reasonable doubt will not, alone, cause reversal of judgment.* The giving of numerous instructions in defining the term "reasonable doubt" is not proper, because the words define themselves, but the giving of such instructions will not be regarded as so prejudicial as to alone warrant the reversal of a judgment.

3. SAME—*errors not presented to Appellate Court are waived.* The Supreme Court reviews the judgment of the Appellate Court, and alleged errors not presented to that court are waived and can not be raised in the Supreme Court for the first time.

4. SAME—*unit of time in law is one day.* The unit of time in law is one day, unless there are hostile claims requiring a division of the unit for the purpose of settling relative rights.

5. SAME—*Parole act of 1917 does not apply to crime of conspiracy.* As the minimum term of imprisonment for the crime of conspiracy, under the Criminal Code, must be taken as one day, the provisions of the Parole act of 1917 for an indeterminate sentence and for parole after one year of imprisonment cannot apply to the crime of conspiracy, and the court may sentence one convicted of that crime to a definite term of imprisonment not exceeding five years.

6. SAME—*when prisoner is eligible to parole under Parole act of 1917.* Before a prisoner sentenced under a general or indeterminate sentence is eligible to parole under the Parole act of 1917 he must have been imprisoned for at least a year and must have served the minimum term of imprisonment provided by law for the crime of which he has been convicted.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Hancock county; the Hon. HARRY M. WAGGONER, Judge, presiding.

NEWMAN, POPPENHUSEN, STERN & JOHNSTON, (ED-WARD R. JOHNSTON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, EARL W. WOOD, State's Attorney, and EDWARD C. FITCH, (CLIFTON J. O'HARA, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Joseph M. Moses and Arthur Wilson were charged in an indictment in the circuit court of Hancock county with conspiracy to obtain from Mary G. Carr property or money of the value of $75 by means of false pretenses. They were found guilty and by the verdict punishment was fixed at confinement in the penitentiary for a term of eighteen months. They were sentenced in accordance with the verdict, and Joseph M. Moses, plaintiff in error, sued out a writ of error from the Appellate Court for the Third District, where the judgment was affirmed, and he prosecuted a writ of error from this court to review the judgment of the Appellate Court.

In April, 1917, Joseph M. Moses, plaintiff in error, and Arthur Wilson formed a partnership to travel from place to place under the firm name of J. M. Moses & Co., specialists to treat and cure diseases, and divide the money obtained from the business equally. Moses was a graduate of the College of Physicians and Surgeons of Chicago and had traveled through the country districts of Illinois and Missouri since 1897 practicing as a specialist for diseases of the eye, ear, nose and throat. Wilson was an optician, who had traveled, doing work in that line, for fourteen years. Wilson solicited the business and did some optical work, and Moses made free examinations and treated such persons as could be induced to accept and pay for services. About the last of May, 1917, Moses and Wilson established Quincy as their headquarters and made daily trips through

the country in the prosecution of their business. On June 21, 1917, they left Loraine in the morning in a hired automobile and stopped at various places soliciting persons to be treated. About 10:30 o'clock in the forenoon they came to the home of Mary G. Carr, two miles west of the village of Stillwell, and were told by the driver that she was a widow and owned the farm. Wilson went into the house and handed to Mrs. Carr a card having on it the firm name, above which were the words, "Illinois State License—Missouri State License," and below were the words, "Chicago, Ill., St. Louis, Mo.," and asked her if her people were well. Mrs. Carr said that her daughter, Iva, had hay fever and asthma but was not at home and would be back in the afternoon about 2:30 o'clock. Wilson asked if there was any consumption in the family, and Mrs. Carr said there was on her husband's side. Moses and Wilson returned about 2:30 in the afternoon, when the daughter, Iva, was at home, but she refused to be examined. After much persuasion she consented, and Moses examined her while seated in a chair and also in bed. The only disputed question of fact was as to what occurred in the house at that time after the examination. Mrs. Carr and her daughter testified that Moses told them Iva was in the first stages of consumption; that she had a spot on her left lung as large as a half dollar and if she did not take their treatment she would be dead in a year and a half; that they had authority from the State Board of Health that if she did not take their treatment to place her in the Dwight sanitarium just like an insane person, and unless she accepted their treatment they would be obliged to place her in a sanitarium within twenty-four hours; that they would take her to the Dwight sanitarium and keep her there for a year, and she would see no one and no one would see her, and the State would pay for it if Mrs. Carr was not able but if she was able she would have to pay for it; that Iva refused to take the treatment, and Moses said, "All right my little lady, we don't

have to fool with you; we will send your name to the State Board of Health;" that she again refused, and he said, "You be ready in the next twenty-four hours and we will be after you;" that she said, "You can't take me," and he said, "We will have someone along with us and I guess you will go." Moses testified that he found catarrhal conditions of the nose and throat, known as incipient consumption; that it was a condition where the field was there and when the germ hits it consumption will develop, and that incipient consumption means a germ disease lying there ready to be set afire by conditions which are predisposing. He said that he explained to Mrs. Carr and Iva that the upper part of one lung was slightly affected. Wilson testified that Moses pointed out the conditions of the lungs which might lead to consumption,—a dormant condition which might at any time develop into tuberculosis if a heavy cold settled on the lungs. Both defendants denied any statement about authority from the State Board of Health, or that anything was said about a sanitarium at Dwight, or that threats of any kind were made to take the daughter forcibly or against her will to any sanitarium. Again, there was no dispute as to the following facts: Mrs. Carr and the daughter refused to take the treatment and Moses and Wilson went out to the automobile. The daughter then consented to take the treatment and Mrs. Carr went to the door and called Wilson. Moses told Wilson that the old lady was up and stirring around and coming out of the house, and Wilson told the driver to make a stall and get a bucket of water, which was done. It was then agreed that the cost of the treatment should be $150,—$75 cash and $75 at the end of one year,—and if the daughter was not cured at the end of one year the defendants would continue to treat her for nothing. Mrs. Carr then gave her check for $75 on a bank at Stillwell, and Moses gave her a bottle of liquid, two boxes of pills and an atomizer. Moses and Wilson then drove direct to the bank at Stillwell, where the check was cashed.

There was no tuberculosis sanitarium at Dwight, and neither Moses nor Wilson had any authority to represent the State Board of Health. Neither that board nor the department of public health has ever exercised any authority over tuberculosis and Iva Carr was not suffering from tuberculosis when she was examined. The jury were fully justified in finding that the check was obtained by false pretenses of the plaintiff in error which Mary G. Carr believed to be true.

The argument that the check was obtained by threats and intimidation and therefore a conspiracy to obtain money by false pretenses was not established, is not founded in fact and affords no ground for reversing the judgment. It is true there were threats, but they would have been wholly ineffective but for the false representations of authority from the State Board of Health to represent that board as specialists in the treatment of disease and the knowingly false representation that the daughter had tuberculosis. If Mary G. Carr had known that her daughter did not have tuberculosis and that the State Board of Health had never assumed any jurisdiction of tuberculosis or authorized the plaintiff in error and Wilson to represent the State board she would not have cared for their threats or given up her check.

It was assigned for error in the Appellate Court, and is again assigned in this court, that the circuit court erred in giving instructions to the jury. The objections made are of little importance and the series of instructions fully and fairly presented the law. The principal complaint is that the court gave several instructions on the subject of reasonable doubt, informing the jury that a reasonable doubt must be reasonable and not unreasonable nor a variety of other things not within the meaning of the word "reasonable." The giving of such instructions has been criticised, both as unnecessary and because there is no better definition of the meaning of the words "reasonable doubt" than the words themselves, (*People* v. *Harrison,* 261 Ill. 517;

*People* v. *Parker,* 284 id. 272;) but they have not been regarded as so prejudicial as to alone warrant the reversal of a judgment. In *Bean* v. *People,* 124 Ill. 576, an instruction, characterized as a treatise on reasonable doubt, containing seven specifications of what is and what is not a reasonable doubt, was given to the jury, and the court said that in order to a full understanding by the jury of the import of the term somewhat of amplification might be excusable. The judgment would not be reversed on account merely of these instructions, and it appears from a certified copy of the brief and argument of the plaintiff in error in the Appellate Court that no objection was made or argued concerning the giving of any instruction here complained of. This court reviews the judgment of the Appellate Court, and alleged errors not presented to that court are waived and abandoned and cannot be raised in this court for the first time. *Dunn* v. *Crichfield,* 214 Ill. 292; *People* v. *Seymour,* 272 id. 295; *People* v. *Donahoe,* 279 id. 411.

It is argued that the court erred in directing the jury, if they found the plaintiff in error guilty, to fix the punishment, and that the verdict and sentence were contrary to law because the Parole law of 1917 required an indeterminate sentence. That Parole law is entitled "An act to revise the law in relation to the sentence and commitment of persons convicted of crime or offenses and providing for a system of parole and to repeal certain acts and parts of acts therein named." (Laws of 1917, p. 353.) Section 1 of the act provides that the jury shall fix the punishment for the offenses of misprision of treason, murder, rape or kidnaping, and section 2 provides that except for crimes enumerated in section 1 every sentence to the penitentiary shall be a general sentence of imprisonment and the court imposing the sentence shall not fix the limit or duration of the imprisonment. The punishment fixed by the Criminal Code for the crime of conspiracy is imprisonment in the penitentiary for not more than five years or a fine not ex- .

ceeding $2000, or both. The unit of time in the law is one day, unless there are hostile claims requiring a division of the unit for the purpose of settling relative rights. (*Grosvenor* v. *Magill & Latham,* 37 Ill. 239; *Levy* v. *Chicago Nat. Bank,* 158 id. 88.) The punishment prescribed by the Criminal Code is therefore imprisonment for a minimum time of one day and a maximum of five years. While the general language of sections 1 and 2 might be regarded as applying to all crimes, section 7 provides that no person sentenced under a general or indeterminate sentence shall be eligible to parole earlier than one year after commitment, nor until he or she shall have served the minimum term of imprisonment provided by law for the crime or offense for which he or she was sentenced. The general provisions of sections 1 and 2 therefore cannot apply to the crime of conspiracy unless the Parole law amended the Criminal Code by increasing the minimum term of imprisonment to one year or one convicted of that crime is eligible to parole the next day after his commitment. The first proposition is not within the purpose or any provision of the Parole law and if adopted would render it unconstitutional, and the second is contrary to the plainly expressed legislative intent.

In *Featherstone* v. *People,* 194 Ill. 325, the court said that the Parole law then in force was not intended to fix the punishment for crime but from its provisions clearly implied that the General Assembly had already defined crimes and fixed their punishment, and that parole laws do not fix punishment but direct the manner of imposing sentence by the court. In *People* v. *Hartsig,* 249 Ill. 348, Emory Hartsig was convicted of the crime of conspiracy and was sentenced under the Parole law. The judgment was reversed, and it was decided that the Parole law did not apply to the crime because it fixed a term of imprisonment of not less than one year. It was also decided that the subject of fixing punishments for crime was not within the scope of the title of the act then in force, which was the same as

the title of the present act, and a provision therein changing the punishment for conspiracy to a term of not less than one year nor more than five years would be void under section 13 of article 4 of the constitution. As applied to this case it would also be *ex post facto,* since the crime was committed on June 21, 1917, before the act took effect.

One sentenced to the penitentiary under a general or indeterminate sentence cannot be released on parole until he has been confined in the penitentiary at least one year nor until he shall have served the minimum term of imprisonment provided by law for that crime. The two conditions must concur. One year of imprisonment must have been served in any case, and if the minimum term of imprisonment provided by law for the crime exceeds one year the imprisonment must be for such minimum term. If the General Assembly had intended that a prisoner committed under a general or indeterminate sentence should be eligible to parole when he had served the minimum term of imprisonment prescribed by law for the crime of which he was convicted, a provision to that effect would have covered the entire subject and there would have been no necessity for fixing the period of one year. The plain meaning of the Parole law is that the imprisonment shall be for at least a year, and if the minimum term fixed by law is more than a year the prisoner must serve that length of time before being eligible to parole. The Parole law of 1917 has not changed the term of imprisonment fixed by the Criminal Code for the crime of conspiracy.

The court did not err in directing the jury to fix the punishment of the plaintiff in error nor in sentencing him to confinement in the penitentiary for a definite term of eighteen months, and the judgment is affirmed.

*Judgment affirmed.*