THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MITCHELL KELLOGG, Defendant-Appellant.

First District (5th Division)    No. 78-149

Opinion filed January 26, 1979.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg and John F. Westley, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Dewey Roscoe Jones, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of armed robbery and, on appeal, contends only that the trial court's polling procedure denied him a fair trial by coercing the assent of a juror to a verdict which was not hers.

The verdict of guilty was signed by all jurors, and during the polling procedure each juror was asked "Was this then and is it now, your verdict?" Except for the following colloquy, each juror responded affirmatively:

> "The Clerk: Susan M. Vesecky, was this then and is this now your verdict?
>
> Juror Vesecky: Yes. Can I change my vote?
>
> The Court: The question is, was this then and is this now your verdict?
>
> Juror Vesecky: (No response.)

The Court: Was this then and is this now your verdict?

Juror Vesecky: Yes, sir."

Prior to the entry of judgment on the verdict, defendant made no objection to this manner of polling; but, in his post-trial motion, alleged that the polling procedure denied him a fair trial.

OPINION

■■ Initially, it should be noted that the State contends that defendant waived review of the polling by failing to object prior to the discharge of the juror. Contrariwise, defendant argues that the question was preserved by its inclusion in his post-trial motion. We find no merit in defendant's argument, as the jury had been discharged prior to the filing of such motion; however, we believe that the issue is reviewable under the plain error doctrine. (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a).) Plain error has been defined as that which in the ordinary sense has not been preserved for review through the failure to object in the trial court but which, nonetheless, may be noticed by a court of review if its effect was to compromise the substantial right of the accused to a fair trial. (*People v. Manzella* (1973), 56 Ill. 2d 187, 306 N.E.2d 16, *cert. denied* (1974), 417 U.S. 933, 41 L. Ed. 2d 236, 94 S. Ct. 2644; *People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126.) As was stated in *People v. Burson* (1957), 11 Ill. 2d 360, 370-71, 143 N.E.2d 239, 245:

> " 'The court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice of errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved or the question is imperfectly presented.' [Citations.]"

■■ Because the coercion of a juror to accept a verdict which was not hers, if shown to be the case, would substantially prejudice defendant's right to a fair trial, we will consider the propriety of the polling of juror Vesecky although no objection was made thereto.

A defendant in a criminal case is guaranteed a trial by a jury of impartial persons. (Ill. Const. 1970, art. I, §16.) The essential requirement of the jury trial in this state is that the jurors decide unanimously the facts in controversy (*People v. Beck* (1971), 133 Ill. App. 2d 356, 273 N.E.2d 169), and the verdict must be freely arrived at by each juror (*Martin v. Morelock* (1863), 32 Ill. 485). As was stated in Annot., 25 A.L.R. 3d 1151 (1969):

> "The purpose of a poll of the jury in a criminal case is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned, and thus enable the court and the parties to ascertain

with certainty that the jurors are in agreement as to a verdict and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented."

■■ In polling a jury, the trial court must fully examine those jurors whose responses indicate possible dissent from the verdict to ascertain whether there may have been coercion. (*People ex rel. Paul v. Harvey* (1972), 9 Ill. App. 3d 209, 292 N.E.2d 124.) However, as a juror's response need not be in any specific form, an unorthodox response of itself does not automatically cast doubt on the unanimity of the verdict. (*People v. Riddle* (1977), 49 Ill. App. 3d 46, 363 N.E.2d 881.) Moreover, further questioning to achieve a more orthodox answer does not require the court to specifically ask the juror to define his first unorthodox response so long as the juror is given the opportunity to disavow the verdict. (See *People v. Gardner* (1976), 40 Ill. App. 3d 700, 352 N.E.2d 448; *People v. Hill* (1973), 14 Ill. App. 3d 20, 302 N.E.2d 373.) Ultimately, the question of whether a juror's response to a poll of the jury indicates a lack of voluntary assent to the verdict is one for the trial court, which is in the best position to observe the juror's demeanor and tone of voice, and its determination should not be disturbed by a court of review unless it is clearly unreasonable. *People v. Herron* (1975), 30 Ill. App. 3d 788, 332 N.E.2d 623.

The cases, however, do not provide clear guidance to the trial courts in this determination. In *People v. Preston* (1978), 60 Ill. App. 3d 162, 376 N.E.2d 299, a juror responded to the poll by the reply, "Compromise." The trial court then inquired:

" 'Juror Goss, you were asked by the Clerk if your verdict when you signed this was your verdict, and is it still your verdict. What is your answer to that?

DEFENSE COUNSEL: Judge—

COURT: Wait a minute. Is it still your verdict?

JUROR GOSS: Yes.

COURT: Is it still your verdict as of right now?

JUROR GOSS: Yes.' " (60 Ill. App. 3d 162, 169-70, 376 N.E.2d 299, 304.)

There, while it appeared that the juror wished to make some unknown statement, we opined that inasmuch as the trial court asked open-ended questions as to whether it was still the juror's verdict to which the juror could assent or dissent, the court's conclusion that assent was voluntary was not unreasonable. In *Goshey v. Dunlap* (1973), 16 Ill. App. 3d 29, 34, 305 N.E.2d 648, 652, during the polling of the jurors, the court twice instructed them that when the name of each was called he should answer, " 'This was and this is now my verdict.' " This court, in reversing, held that

such instruction totally failed "to provide for the possibility of a juror's disagreement with the verdict." In *People ex rel. Paul v. Harvey*, the following occurred during polling:

"THE COURT: Is this and was this your verdict?

JUROR: Well, it wasn't exactly, no.

THE COURT: Did you sign this?

JUROR: Yes I did.

THE COURT: Then it's your verdict." (9 Ill. App. 3d 209, 210, 292 N.E.2d 124, 125-26.)

The *Harvey* court stated:

"Although the juror signed the verdict, her statements upon being polled indicated the possibility of disagreement with the verdict. The court, however, did not explore this possibility; rather, it assumed concurrence in the verdict from the mere fact that the juror signed the verdict. If the signing of a verdict were to be considered conclusive, as was done by the court in this case, a polling of the jury would in every case, become a perfunctory and senseless procedure. Moreover, the court's language foreclosed the juror from an opportunity to express dissent. This was error. When the court polls the jury it must fully examine those jurors whose statements indicate possible dissent from the verdict. Its examination must be conducted with a view toward determining whether any juror had been coerced into accepting the verdict of the other jurors." (9 Ill. App. 3d 209, 212, 292 N.E.2d 124, 127.)

The reviewing courts have affirmed trial court's findings of voluntary assent in *Riddle* and *Gardner*. In *Riddle*, the colloquy was as follows:

"COURT: Mr. Gunter, is this your verdict?

A: Yes, sir.

Q: Are you satisfied with it?

A: In a way I was and in a way I wasn't.

Q: Do you want this to be your verdict?

A: I guess it will have to be.

Q: And do you want me to accept it?

A: Yes, sir.

＊ ＊ ＊

Q: Mrs. Christian, is this your verdict?

A: Yes, sir.

Q: Are you satisfied with it?

A: In some ways and in some ways not.

Q: Do you want me to accept it?

A: Yes, sir." (49 Ill. App. 3d 46, 48, 363 N.E.2d 881, 883.)

In *Gardner*, the following occurred during polling:

"The Court: Mr. Bunetic?

Mr. Bunetic: I give my verdict as not guilty, but there was certain points that I was not certain of, that I was * * * reluctant, I should state.

The Court: Did you sign this verdict?

Mr. Bunetic: I signed it guilty.

The Court: Is this your verdict?

Mr. Bunetic: I signed it guilty, sir." (40 Ill. App. 3d 700, 702, 352 N.E.2d 448, 449.)

So also, in *People v. Massie* (1972), 5 Ill. App. 3d 432, 283 N.E.2d 293, was the polling procedure approved where one of the jurors responded, " 'I pleaded guilty, yes' to the question, '[W]as this and is this now your verdict?' "

The cases cited reveal a thin line of reasoning separating the findings of coercion and voluntary assent. While in the instant case a very able trial judge found such assent, we believe the facts are controlled by the reasoning of *Goshey* and *Harvey*. In response to the compound question, "Was this then and is this now your verdict?" juror Vesecky replied, "Yes. Can I change my vote?" Unlike *Preston*, where the trial court upon receiving an unorthodox response afforded the juror the opportunity to disavow the verdict by asking on two occasions a question as to whether the verdict was *presently* hers, the trial court in the instant case twice repeated the question in compound form. After initially giving no response, juror Vesecky answered the second repetitive query affirmatively. It was defendant's position here that the response "Yes. Can I change my vote?" displayed prior assent to the verdict but also bespoke the possibility of a present desire to dissent from it.

Although such dissent is not apparent from the record, we think that the juror's response indicated she might then have been in disagreement with the verdict, as we can see no utility in her question were she not considering a disavowal of her earlier assent. Since the procedure used by the trial court mandated a yes-or-no reply to the compound question and because she had indicated earlier assent, it appears to us that the only response available to her was, "Yes."

■ Therefore, as was the case in *Goshey* and *Harvey*, we are of the opinion that the court's questioning foreclosed juror Vesecky's opportunity to dissent, and we conclude that its determination that she voluntarily assented to the verdict is clearly unreasonable.

For the reasons stated, the judgment appealed from is reversed and the cause remanded for a new trial.

Reversed and remanded.

MEJDA and WILSON, JJ., concur.