THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
IRENE JENKINS, Defendant-Appellant.

First District (3rd Division)    Nos. 77-1925, 79-56 cons.

Opinion filed September 30, 1980.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Patrick W. O'Brien, Assistant State's Attorneys, of counsel), for the People.

Julius L. Sherwin and Marvin A. Brusman, both of Chicago, for appellant.

Mr. JUSTICE RIZZI delivered the opinion of the court:

Defendant, Irene Jenkins, was charged with attempt murder and two counts of aggravated battery. A jury found her not guilty of attempt murder but was unable to reach a verdict on the aggravated battery charges. A mistrial was declared, and the State sought to prosecute her again on the aggravated battery charges. Defendant filed a motion to dismiss in which she argued that a retrial on those charges would subject her to double jeopardy. The trial court granted the motion. The appellate court reversed the dismissal order and remanded the case for a new trial.

(*People v. Jenkins* (1976), 41 Ill. App. 3d 392, 354 N.E.2d 139.) In a second jury trial, defendant was found guilty of aggravated battery and sentenced to a term of one to five years. On appeal, she contends that reversible error was committed when the trial court orally attempted to explain the meaning of reasonable doubt to the jury. We reverse and remand for a new trial.

During the early morning of November 6, 1972, defendant was at a lounge located in Chicago, Illinois. She was standing near a jukebox when Thelma Rambus approached. The two women had an argument regarding the selections on the jukebox. Both women returned to their seats, but the argument continued.

Shortly after the argument, Rambus went outside with Darrell Johnson. Approximately 10 to 20 minutes later, defendant and her sister left the lounge. Rambus was still outside the lounge. According to Rambus, she walked towards defendant to apologize, and defendant's sister hit her on the head. Rambus stated that she and defendant's sister then started pushing and hitting each other. Defendant testified that Rambus ran out of a hallway and began pulling defendant's sister's hair.

While the women were fighting, Johnson and another man tried to separate them. A gunshot was fired and Rambus was wounded. Four of the State's witnesses stated that defendant pulled a gun and shot Rambus. Three defense witnesses, including defendant, testified that defendant did not have a weapon in her hand and that they did not know who fired the shot. The defense witnesses testified that defendant had her arm around her sister's waist at the time of the shooting. Defendant and her sister ran to their car and left because they thought someone was shooting at them. No weapon was found at the scene.

Defendant contends that reversible error was committed when the trial court attempted to explain the meaning of reasonable doubt to the venire. The trial court stated:

"The burden of proving a defendant guilty beyond a reasonable doubt is on the State. A defendant is not required to prove his innocence. Now, to help you understand the meaning of beyond a reasonable doubt, I'd like to take this opportunity to add these things. That is the burden of proof beyond a reasonable doubt, which the State must meet is the same burden in every case—every criminal case. It does not matter whether the nature of the case—whether it's an offense against persons or property or whatever. And while the presumption of innocence obtains and it remains with the defendant, it is a rebuttable presumption and can be overcome by evidence.

By way of example, I'll use this glass of water. If you can see the glass without this rubber band around it. That rubber band repre-

sents beyond a reasonable doubt. The defendant is like a chip of wood in the bottom of the glass. In order to prove the defendant guilty, the State must pour in enough water to float the defendant to the line of reasonable doubt, represented by the rubber band.

If they don't float the defendant that high then they fail and you must find the defendant not guilty. If they float the defendant to that line, then they have met their burden of proof beyond a reasonable doubt. And you must find her guilty. You must not require the State to fill the glass. They don't have to prove it to a mathematical certainty. But to a reasonable doubt. I hope the illustration is helpful to you. It is a sometimes confusing concept. And I want to be sure you understand it before we go on."

Later, the prosecutor used the trial court's analogy on two occasions during his closing argument to the jury:

"Well, I am not submitting to you that this is a perfect prosecution. There never has been a perfect prosecution. There's always something missing. And there never has been a perfect case. Leopold and Loeb couldn't commit the perfect case with their hundred and eighty I.Q.'s. They couldn't commit the perfect crime. But all we have to do is fill up the glass, like the judge showed it. We don't have to make it overflow, and overflow, and overflow. We have to prove her guilty beyond a reasonable doubt. And I submit to you that we have proved her guilty not only beyond a reasonable doubt but beyond all doubt.

* * *

But, I submit to you that the evidence in this case is overwhelming that we have proved her guilty. Not beyond a reasonable doubt, but beyond all doubt. We have filled up not one but two and three glasses of water in this case."

■■ The State argues that defendant waived any error the trial court may have committed when it attempted to explain the meaning of reasonable doubt to the venire because defendant did not make any objection at the time and did not allege the error in her post-trial motion. However, we believe the trial court's oral explanation of reasonable doubt had the effect of improperly instructing the jury. Although the failure to object may constitute a waiver, a defendant's failure to object is not as important with reference to fundamental fairness as the quintessential requirement that the jury be properly instructed when one stands to lose his liberty. (*People v. Pernell* (1979), 72 Ill. App. 3d 664, 666, 391 N.E.2d 85, 87.) Thus, under the doctrine of plain error, we consider the alleged error. See *People v. Manzella* (1973), 56 Ill. 2d 187, 195-96, 306 N.E.2d 16, 20; *People v. Kellogg* (1979), 68 Ill. App. 3d 456, 458, 386 N.E.2d 481, 483, *affirmed* (1979), 77 Ill. 2d 524, 397 N.E.2d 835.

■■ In this case, the trial court's attempt to explain reasonable doubt was in itself improper. There is no better definition of reasonable doubt than the words themselves. (*People v. Moses* (1919), 288 Ill. 281, 285, 123 N.E. 634, 636.) Consequently, the concept of reasonable doubt needs no explanation. (*People v. Viser* (1975), 62 Ill. 2d 568, 585, 343 N.E.2d 903, 912; *People v. Cagle* (1969), 41 Ill. 2d 528, 536, 244 N.E.2d 200, 204; *People v. Schuele* (1927), 326 Ill. 366, 372, 157 N.E. 215, 217; *People v. Amos* (1977), 46 Ill. App. 3d 899, 902, 361 N.E.2d 861, 863.) Our supreme court has made this very clear by repeatedly commenting on the futility of attempting to define the term. In *People v. Malmenato* (1958), 14 Ill. 2d 52, 61, 150 N.E.2d 806, 811, the court stated that "we have so frequently discussed the futility of attempting to define [reasonable doubt] that we might expect the practice to be discontinued." See also *People v. Edwards* (1953), 55 Ill. 2d 25, 35, 302 N.E.2d 306, 311; *People v. Whittaker* (1970), 45 Ill. 2d 491, 496, 259 N.E.2d 787, 789.

Moreover, the trial court's explanation of reasonable doubt in this case was based upon an inapposite comparison of the term to a glass of water. Clearly, trial courts should refrain from attempting to orally explain terms in jury instructions by the use of such analogies. Here, the analogy emphasized the quantity of evidence introduced by the State without taking into account the evidence introduced by the defendant or the credibility of the witnesses. Thus, the analogy is patently misleading.

■■ Accordingly, the trial court's oral explanation of reasonable doubt had the effect of improperly instructing the jury. This prejudice to defendant was compounded by the prosecutor's use of the trial court's analogy in his closing argument. The conviction must therefore be reversed and the defendant granted a new trial.

Reversed and remanded.

SIMON, J., concurs.

Mr. JUSTICE McNAMARA, dissenting:

Because I believe defendant waived the issue regarding the trial court's comments on reasonable doubt, I respectfully dissent.

Where no objection is made to remarks of the court and no question about them is raised in the post-trial motion, any error is deemed waived. (*People v. Beasley* (1977), 54 Ill. App. 3d 109, 369 N.E.2d 260.) Here, as part of its preliminary remarks to the venire prior to jury selection, the trial court attempted to explain the concept of reasonable doubt. Defendant did not object to those comments at the time they were made nor did she raise them as error in her post-trial motion.

The waiver rule, of course, is not absolute. (*People v. Roberts* (1979),

75 Ill. 2d 1, 387 N.E.2d 331.) The plain error exception permits a reviewing court to take notice of errors appearing on the record which deprive the accused of substantial means of enjoying a fair and impartial trial and, in criminal cases in which the evidence is closely balanced, to consider errors not properly preserved for review. (*People v. Howell* (1975), 60 Ill. 2d 117, 324 N.E.2d 403.) To invoke the plain error doctrine, defendant must establish that the error was so prejudicial as to deny his right to a fair trial. (*People v. Beasley*.) The plain error rule does not mandate that a reviewing court consider all errors affecting substantial rights whether or not brought to the trial court's attention. *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

As the majority points out, the concept of reasonable doubt requires no definition. And, in some cases, an involved instruction on reasonable doubt may result in reversible error. (*People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903; *People v. Cagle* (1969), 41 Ill. 2d 528, 244 N.E.2d 200.) Yet, even giving an instruction on reasonable doubt does not of itself require a new trial. (*People v. Perry* (1972), 52 Ill. 2d 156, 286 N.E.2d 345; see *People v. Maffioli* (1950), 406 Ill. 315, 94 N.E.2d 191.) Instead, an instruction of such character is one factor, although substantial, to be considered in the context of the entire case. *People v. Perry.*

While the court's preliminary explanation of reasonable doubt was improper in the present case, I cannot say that it resulted in such prejudice to defendant as to warrant reversal. Unlike the definition of reasonable doubt found to constitute reversible error in *People v. Cagle*, the comments complained of here did not suggest that the law requires that an acquittal be justified. Nor did the remarks diminish the importance of the reasonable doubt standard as did the prosecutor's statement in *People v. Martinez* (1979), 76 Ill. App. 3d 280, 395 N.E.2d 86. The majority concludes that the judge's remarks improperly instructed the jury by emphasizing the quantity of evidence introduced by the State without regard to the evidence introduced by the defense or the credibility of witnesses. Yet the comments were made prior to jury selection. And at the time, the court emphasized that its remarks were not instructions. In addition, in its instructions at the close of trial, the court instructed the jury that defendant is presumed innocent; that the presumption is not overcome unless from all the evidence they are convinced beyond a reasonable doubt that defendant is guilty; and that they are the sole judges of the credibility of the witnesses. Absent some indication that the jury disregarded these instructions, they may be deemed curative of the court's earlier comments. (*People v. Beasley*.) Moreover, ample evidence was presented to support defendant's conviction.

For these reasons, I do not believe the error complained of falls within the plain error exception to the waiver rule. I thus would hold that

defendant waived her right to challenge the propriety of the trial court's comments on reasonable doubt, and would affirm the judgment of conviction.