# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Franklin, 2012 IL App (3d) 100618**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEON A. FRANKLIN, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-10-0618 |
| Filed | June 7, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for aggravated criminal sexual abuse were reversed where the trial court's instruction to potential jurors that "beyond a reasonable doubt" is "what each of you individually and collectively, as 12 of you, believe is beyond a reasonable doubt" violated defendant's constitutional rights, since judges in Illinois courts are prohibited from defining "reasonable doubt," the trial court's error was structural error and was compounded when the prosecutor reminded the jury of the trial court's statement during closing argument, there was a likelihood the jurors understood a conviction could be based on proof less than a reasonable doubt, and reversal was required under the plain error doctrine. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 08-CF-719; the Hon. Robert P. Livas, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Bryon M. Reina (argued), of State Appellate Defender's Office, of
Chicago, for appellant.

James Glasgow, State's Attorney, of Joliet (Terry A. Mertel and Robert
M. Hansen (argued), both of State's Attorneys Appellate Prosecutor's
Office, of counsel), for the People.

Panel

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Carter concurred in part and dissented in part, with opinion.

## OPINION

¶ 1 Defendant, Leon A. Franklin, was convicted of two counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2006)) and sentenced to two consecutive five-year terms of imprisonment. On appeal, defendant argues that (1) his due process rights were violated when the trial court instructed jurors that it was for them to decide the meaning of reasonable doubt; (2) he was denied a fair trial by the prosecutor's statements during closing argument that the State's evidence was "uncontradicted"; (3) the trial court did not adequately inquire into his *pro se* posttrial claim of ineffective assistance of counsel; and (4) the trial court abused its discretion in sentencing him to consecutive prison terms. We reverse, finding that the trial court's instruction to the jury regarding reasonable doubt violated defendant's constitutional rights.

¶ 2                                   BACKGROUND

¶ 3 Defendant was charged with two counts of aggravated criminal sexual abuse against a minor, S.R., for placing his penis in S.R.'s vagina in December 2007 and on February 23, 2008.

¶ 4 During jury selection, the trial judge told the potential jurors:

"Beyond a reasonable doubt means beyond a reasonable doubt. It's what each of you individually and collectively, as 12 of you, believe is beyond a reasonable doubt."

Thereafter, 12 jurors and 2 alternates were chosen, and defendant's trial began.

¶ 5 S.R. testified that on February 23, 2008, she was 16 years old. She was living in an apartment with Sonya Johnson, Johnson's four-year-old daughter, and defendant. Johnson is S.R.'s father's ex-girlfriend. Defendant is a friend of her father's, whom S.R. has known all her life.

¶ 6 According to S.R., on February 23, 2008, Johnson made plans to go out with her friend, Adrian Brown. Defendant was supposed to take S.R. and Johnson and Brown's children

somewhere while Johnson and Brown were gone. After Johnson and Brown left Johnson's apartment, the children fell asleep in S.R.'s bedroom. While the children were resting, S.R. went into Johnson's bedroom to clean it. When S.R. was cleaning the room, defendant came to the doorway with his pants on the floor and a condom on his penis. Defendant walked toward her and put his penis inside her vagina. Defendant had sexual intercourse with S.R. for approximately 10 minutes until Johnson and Brown returned.

¶ 7 When Johnson and Brown came home, defendant got up, and S.R. went into her bedroom. As defendant was putting on his pants, Brown opened the door to Johnson's bedroom. According to S.R., Johnson and Brown then started yelling and screaming, and defendant got his coat and left. Later, the police came, and S.R. told the police what happened. Johnson took S.R. to the hospital.

¶ 8 S.R. testified that defendant also had sexual intercourse with her in December 2007. On that occasion, she was lying on the couch in the living room. Defendant laid down behind her, and, according to S.R., "[h]e just put his penis in my vagina." The intercourse lasted about five minutes.

¶ 9 About a month earlier, S.R. woke up to find defendant laying behind her in her bed. Defendant said that he wanted to hold her. S.R. said, "no." Defendant then "took out his penis" and rubbed it on her thigh. She told defendant that she was going to scream if he did not leave. Defendant got up and left.

¶ 10 Sonya Johnson testified that she met S.R.'s father, Lucius R., in 2006, and dated him a little over a year. When they broke up, in December 2007, Lucius asked Johnson to take care of S.R. Johnson agreed, and S.R. began living with Johnson.

¶ 11 On February 23, 2008, Johnson and Brown made plans to have defendant take S.R. and their children on an outing. Brown gave defendant $100 and the keys to her car. Johnson and Brown left first, ran some errands and returned to Johnson's home. When they came back, they were surprised to see that Brown's car was still there. When they entered the apartment, Brown walked past Johnson toward Johnson's bedroom. Johnson then heard Brown say, "Oh, my God; oh, my God; oh, my God." Johnson walked toward her bedroom and saw defendant standing at the foot of her bed pulling up his underwear. Johnson noticed that the room had a musky odor and that her comforter "was messed up," like someone had been in her bed.

¶ 12 Johnson asked defendant, "[H]ow could you do this to me; why would you do it; what are you thinking?" Defendant responded, "I don't know; it just happened; I didn't mean for it to happen." Johnson then went to the back of the apartment to retrieve a baseball bat. When she returned, defendant was leaving. Johnson sat S.R. down and asked her what happened. S.R. "sat there real quiet." Johnson called Lucius. After Johnson reached Lucius, she called the police. The police escorted Johnson and S.R. to the hospital "[t]o have a rape kit done." A rape kit was not done because no parent was present at the hospital to consent.

¶ 13 Adrian Brown testified that she and Johnson left Johnson's apartment in the afternoon on February 23, 2008. After being gone for an hour-and-a-half to two hours, they decided to return to the apartment. Brown entered the apartment first and saw S.R. coming out of Johnson's bedroom. Brown pushed open the door to Johnson's bedroom and saw defendant

pulling up his underwear. His pants were around his ankles. Johnson then went into her bedroom and started yelling at defendant. Brown told defendant that he needed to leave. Brown and Johnson contacted Lucius and called the police.

¶ 14    The State introduced into evidence a copy of defendant's birth certificate, showing his date of birth to be April 17, 1972, making him 35 years old on February 23, 2008. Defendant did not testify or present any witnesses on his behalf.

¶ 15    In closing argument, the prosecutor stated:

"Factually, its uncontradicted that these–those facts occurred. That he was in Ms. Johnson's bedroom when she wasn't home, when Ms. Brown wasn't there. When the only two in there were [S.R.] in the bedroom with the defendant, Leon Franklin. It's uncontradicted.

It's uncontradicted that he pulled down his pants and he inserted his penis in her vagina. That is uncontradicted evidence. It's uncontradicted that she's 16. It's uncontradicted he's 35. It's uncontradicted that there's a 19-year age difference."

The prosecutor reminded jurors in rebuttal closing argument:

"Judge Livas gave you the definition of reasonable doubt. Reasonable doubt is what you believe to be reasonable doubt. You decide what reasonable doubt is. Not [defense counsel], not the State, you decide."

¶ 16    The jury found defendant guilty of both counts of aggravated criminal sexual abuse. Thereafter, defendant filed a *pro se* motion for a new trial, alleging, in part, that his attorney was ineffective for not presenting certain testimony. The court held a hearing to determine if defendants's *pro se* claims warranted appointment of counsel. When asked what evidence his attorney failed to present, defendant said that his attorney did not call his cousin, Portia Sturdevant, to testify and never interviewed two other potential witnesses. The court asked defense counsel about Sturdevant. Defense counsel explained that he interviewed her but chose not to call her to testify because he thought her testimony would hurt defendant's case. The trial court did not question defense counsel about the other two witnesses defendant mentioned. The court found no basis to appoint defendant new counsel to argue his motion.

¶ 17    In sentencing defendant, the court considered defendant's criminal history, which included four prior felonies. The court found that the public needed to be protected from defendant because he committed his crimes while holding a position of power over S.R. The court sentenced defendant to two consecutive five-year prison terms.

¶ 18                    ANALYSIS

¶ 19                        I

¶ 20    Defendant first argues that his due process rights were violated when the trial court instructed the potential jurors that "beyond a reasonable doubt" is "what each of you individually and collectively, as 12 of you, believe is beyond a reasonable doubt." He contends that the prosecutor compounded the error by reminding jurors in closing argument of the court's statement. The State responds that the trial court's instruction was not error, or, alternatively, that defendant forfeited the error by failing to object and raise the issue in

his posttrial motion.

¶ 21    Generally, an issue concerning the propriety of a jury instruction is reviewed under an abuse of discretion standard; however, review is *de novo* when the issue is whether the applicable law was correctly conveyed in the jury instruction. *People v. Turman*, 2011 IL App (1st) 091019, ¶ 18.

¶ 22    In order to preserve an issue for appeal, a defendant must object to the alleged error at trial and include it in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Claims that are not properly preserved may be reviewed only for plain error. *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 18. An error is reversible under the plain error doctrine when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error threatened to tip the scales of justice against the defendant, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Id*. The supreme court has equated the second prong of the plain error analysis with structural errors. *Id*. at ¶ 20 (citing *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010)). An error is structural if it "necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *Thompson*, 238 Ill. 2d at 609.

¶ 23    Our supreme court has repeatedly identified a "defective reasonable doubt instruction" as a structural error. See *People v. Washington*, 2012 IL 110283, ¶ 59; *Thompson*, 238 Ill. 2d at 609; *People v. Averett*, 237 Ill. 2d 1, 13 (2010). The United States Supreme Court agrees. See *Sullivan v. Louisiana*, 508 U.S. 275, 280-82 (1993). In *Sullivan*, the United States Supreme Court held that a constitutionally deficient reasonable doubt instruction "unquestionably qualifies 'as a structural error' " that requires reversal. *Id*. A constitutionally deficient reasonable doubt instruction is one that does not correctly convey the concept of reasonable doubt. See *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). A defendant's due process rights are violated if there is a reasonable likelihood that the jurors understood the instruction to allow a conviction based on proof less than a reasonable doubt. See *id.* at 5, 22-23.

¶ 24    The United States Constitution does not prohibit courts from defining reasonable doubt. *Victor*, 511 U.S. at 5. However, judges in Illinois courts are prohibited from doing so. See *People v. Failor*, 271 Ill. App. 3d 968, 971 (1995) (despite Supreme Court's decisions in *Sullivan* and *Victor*, Illinois law is "clear" that reasonable doubt should not be defined). "The law in Illinois is clear that neither the court nor counsel should attempt to define the reasonable doubt standard for the jury." *People v. Speight*, 153 Ill. 2d 365, 374 (1992) (citing *People v. Cagle*, 41 Ill. 2d 528, 536 (1969), and *People v. Malmenato*, 14 Ill. 2d 52, 61 (1958)). Following our supreme court's unambiguous ruling in *Malmenato* and subsequent cases, the committee notes to Illinois Pattern Jury Instructions, Criminal, No. 2.05 "recommend[ ] that no instruction be given defining the term 'reasonable doubt.' " Illinois Pattern Jury Instructions, Criminal, No. 2.05, Committee Note, at 78 (4th ed. 2000) (citing *Malmenato*, 14 Ill. 2d at 61); *Failor*, 271 Ill. App. 3d at 970.

¶ 25    A trial court's attempt to explain reasonable doubt is improper because there is no better definition of reasonable doubt than the words themselves. *People v. Jenkins*, 89 Ill. App. 3d 395, 398 (1980). "[T]he concept of reasonable doubt needs no explanation." *Id*. When a trial

court improperly instructs a jury regarding reasonable doubt, the prejudice to the defendant is compounded when the prosecutor refers to the instruction in closing argument. See *id*.

¶ 26 The First District recently held that a trial court committed reversible error when it instructed jurors that it was for them "to collectively determine what reasonable doubt is." (Internal quotation marks omitted.) *Turman*, 2011 IL App (1st) 091019, ¶¶ 19, 27. The court held:

> "By instructing the jurors that they should collectively determine what reasonable doubt was, the court allowed the jury to use a standard that in all likelihood was below the threshold of a reasonable doubt standard. *** The effort by the trial court in this case can be construed as an attempt to define that which the Illinois Supreme Court has said cannot be defined in this way." *Id*. ¶ 25.

The court found that the erroneous instruction amounted to plain error under both prongs of the plain error rule, explaining that "[t]he jury may have used a lesser standard of doubt than reasonable doubt since they were to collectively determine what the term meant." *Id*. ¶ 27. The court concluded that the error was so serious that it affected the fairness of the defendant's trial and his right to due process, thereby challenging the integrity of the judicial process. *Id*.

¶ 27 Here, the trial court's instruction to jurors that reasonable doubt is "what each of you individually and collectively, as 12 of you, believe is beyond a reasonable doubt" is nearly identical to the instruction found to be erroneous in *Turman*. Such an instruction is improper because it contravenes the Illinois Supreme Court's mandate that trial courts not define reasonable doubt for the jury. See *Speight*, 153 Ill. 2d at 374; *Failor*, 271 Ill. App. 3d at 970. The error was compounded when the prosecutor reminded the jury of the trial court's statement in closing argument. See *Jenkins*, 89 Ill. App. 3d at 398.

¶ 28 We hold that the trial court's instruction in this case was constitutionally deficient because, by telling jurors that it was for them to collectively determine what reasonable doubt meant, there is a reasonable likelihood that the jurors understood the instruction to allow a conviction based on proof less than a reasonable doubt. See *Turman*, 2011 IL App (1st) 091019, ¶¶ 25, 27; *Victor*, 511 U.S. at 5, 22-23. Since the instruction was constitutionally deficient, it is a structural error that requires reversal. See *Sullivan*, 508 U.S. at 280-82. Thus, we reverse and remand for a new trial.

¶ 29                                                          II

¶ 30 Because we reverse and remand for a new trial on the first issue presented by defendant, we need not discuss the remaining issues at length. Nevertheless, we will briefly address them since they may recur upon retrial.

¶ 31 First, we reject defendant's contention that he was denied a fair trial by the prosecutor's repeated statements during closing argument that the evidence was "uncontradicted." The prosecutor's comments were not intended to focus the jury's attention on defendant's failure to testify; thus, they were not improper. See *People v. Keene*, 169 Ill. 2d 1, 21-23 (1995).

¶ 32 Next, we agree with defendant's contention that the trial court did not adequately address

his claims of ineffective assistance of counsel. At the hearing on defendant's *pro se* motion, the trial court questioned defense counsel about not calling Sturdevant to testify; however, the trial court made no inquiry into defendant's claim that defense counsel allegedly failed to interview two other witnesses. If we had not reversed and remanded on the instruction issue in section I, we would have remanded this case for further inquiry into defendant's *pro se* allegations of ineffective assistance. See *People v. Moore*, 207 Ill. 2d 68, 79 (2003).

¶ 33 Finally, the trial court did not abuse its discretion in sentencing defendant to consecutive prison terms based on the seriousness of defendant's crimes, defendant's extensive criminal history, and the trial court's belief that consecutive sentences were necessary to protect the public from defendant's further criminal conduct. See *People v. Couch*, 387 Ill. App. 3d 437, 445-46 (2008).

¶ 34                                            CONCLUSION

¶ 35 The order of the circuit court of Will County is reversed and the cause is remanded for further proceedings consistent with this decision.

¶ 36 Reversed and remanded.

¶ 37 JUSTICE CARTER, concurring in part and dissenting in part.

¶ 38 I concur with the majority on all of the issues presented on appeal, except for the first one. On that issue, regarding the trial court's reasonable doubt instruction, I would find that the trial court's instruction was not erroneous. Therefore, I would affirm defendant's conviction and sentence and would remand this case for a further hearing on defendant's *pro se* posttrial claim of ineffective assistance of counsel.

¶ 39 In my opinion, to place the reasonable-doubt-instruction issue into context, additional facts must be provided. Defendant's case proceeded to a jury trial in September of 2009. During the jury selection process, the trial judge made numerous comments to the jury pool. Of relevance to this appeal, the trial judge: (1) read the charging instrument to the jury pool and explained that the charging instrument was not evidence against defendant and did not create an inference of guilt; (2) told the jury pool that they would be the judges of the facts in this case and that they would determine whether the witnesses were telling the truth and the amount of weight to be given to the testimony; (3) told the jury pool that they had to keep open minds and could not begin to deliberate on a verdict until they heard all of the evidence, arguments, and instructions on the law; (4) told the jury pool that their verdict had to be based upon the law and the evidence in this case and not upon sympathy, bias, or prejudice; (5) asked the members of the jury pool individually whether they would allow feelings of sympathy, bias, or prejudice to affect their ability to be impartial; (6) asked the members of the jury pool individually if they would listen to all of the evidence, the arguments of the attorneys, and the trial judge's instructions on the law before making up their minds; (7) asked the members of the jury pool individually if they would follow the law as it was given to them, without regard to their own personal feelings about it; (8) asked the members of the

jury pool individually if they would consider the evidence in light of their own observations and experiences in life; (9) asked the members of the jury pool individually if they understood and accepted the propositions that a person accused of a crime was presumed to be innocent of the charge against him and that the presumption of innocence stayed with that person throughout trial and was not overcome unless the evidence led the jury to believe that the State had proven the person guilty beyond a reasonable doubt; (10) asked the members of the jury pool individually if they understood and accepted the propositions that the State had the burden of proving the defendant's guilt beyond a reasonable doubt, that the defendant did not have to prove his innocence, and that if the defendant chose not to, he did not have to present any evidence in his own behalf; (11) asked the members of the jury pool individually if they understood and accepted the propositions that the defendant did not have to testify, that they could not consider the defendant's decision not to testify in any way in arriving at their verdict, and that if defendant chose to testify, they were to judge his testimony the same way that they would judge the testimony of any other witness; (12) asked the members of the jury pool individually if they could judge the testimony of a police officer the same way as they would judge the testimony of any other witness in this case; (13) asked the members of the jury pool individually if they would sign a guilty verdict if, after they heard all of the evidence, arguments, and instructions on the law in the case, they believed the State had proven its case beyond a reasonable doubt; (14) asked the members of the jury pool individually if they would sign a not-guilty verdict if, after they heard all of the evidence, argument, and instructions on the law in this case, they did not believe the State had proven its case beyond a reasonable doubt; (15) told the jury pool that the constitutions of the United States and of Illinois provided that every person was entitled to a fair and impartial trial; and (16) asked the members of the jury pool individually whether they could give both sides a fair and objective trial.

¶ 40    At one point during the jury selection process, prior to many of the comments listed above, the trial judge told to the jury pool about reasonable doubt. The trial judge stated to the jury pool:

> "I will guarantee that every one of you knows what the burden of proof is in a criminal trial just by being alive that long. Beyond a reasonable doubt. The definition of beyond a reasonable doubt–you are going to love of [*sic*] this. Whole reason I went to law school is just to find out what those four words meant. Beyond a reasonable doubt means beyond a reasonable doubt. It's what each of you individually and collectively, as 12 of you, believe is beyond a reasonable doubt. The point I bring that up is this. Most of you have heard of that burden. What you don't know, because of that burden, is when we begin to select this jury, the State will go first. When the selection process is over, we have got the jurors assembled, what's the first part of any trial called?

> Opening statements.

> The State will go first. Presentation of evidence, the State will go first. When all the evidence has been complete[d] and what's called closing arguments, which is the end of trial, the State will go first, and they will go last. They'll speak to you twice at the end of trial. The reason for that, they have got the burden beyond a reasonable doubt."

¶ 41    During his initial closing argument, the prosecutor pointed out repeatedly that certain aspects of the State's evidence were uncontradicted. The prosecutor commented to the jury that the State's burden of proof was beyond a reasonable doubt and told the jury that the State acknowledged that standard. Defense counsel, in his closing argument, told the jury that the prosecution had not proven beyond a reasonable doubt that the defendant committed the offenses and stated to the jury that he would explain to it why the prosecution had utterly failed to sustain its burden of proof. Defense counsel criticized the prosecutor's repeated use of the word "uncontradicted" and reminded the jury that defendant was presumed innocent and that defendant did not have to prove anything or present any evidence whatsoever. Defense counsel commented upon the lack of any physical evidence and faulted the prosecution for not insisting that the items in police possession be tested. In addition, defense counsel pointed out certain testimony from the State's witnesses that he believed to be problematic or inconsistent. Defense counsel also told the jury that the State had the burden to prove defendant guilty of the offenses beyond a reasonable doubt, which was the highest burden of proof available under the law. Defense counsel commented that it would be difficult for the jury to sign a guilty verdict in this case because there was reasonable doubt. In rebuttal closing argument, the prosecutor reminded the jury of the trial judge's comment during jury selection, telling the jurors it was for them to decide what reasonable doubt was and not for the State or the defense to decide.

¶ 42    After closing arguments were completed, the trial court instructed the jury on the law. Of relevance to this appeal, the jurors were instructed that: (1) the law that applied in this case was stated in the instructions and that it was their duty to follow all of the instructions; (2) it was their duty to determine the facts and to do so only from the evidence in this case and to decide this case by applying the law to the facts; (3) they should not be influenced by sympathy or prejudice or by a person's race, color, religion, or national ancestry; (4) they should consider all of the evidence in light of their own observations and experiences in life; (5) the trial judge was not trying to indicate any opinion as to the facts or as to what the verdict should be by the instructions that he was giving or by any remark that he had made; (6) they were the judges of the believability of the witnesses and of the weight to be given to the testimony of the witnesses, and that in considering the testimony of the witnesses, they could take into account the witness's age, any interest, bias, or prejudice the witness may have had, and the reasonableness of the witness's testimony considered in the light of all of the evidence in this case; (7) opening statements and closing arguments were not evidence and that any statement or argument made by the attorneys that was not based upon the evidence should be disregarded; (8) the charging document was not any evidence against defendant; (9) defendant was presumed to be innocent of the charges against him and that the presumption remained with defendant throughout every stage of the trial and throughout their deliberations and was not overcome unless from all the evidence in this case, they were convinced beyond a reasonable doubt that defendant was guilty; (10) the State had the burden of proving defendant guilty beyond a reasonable doubt and that the burden remained on the State throughout the case; (11) defendant was not required to prove his innocence; (12) the fact that defendant did not testify could not be considered by them in any way in arriving at their verdict; (13) the State had to prove certain specific propositions to sustain the charges

-9-

against defendant; (14) they should find defendant guilty if they found from their consideration of all of the evidence that each of the propositions had been proven beyond a reasonable doubt; and (15) they should find defendant not guilty if they found from their consideration of all of the evidence that any one of the propositions had not been proven beyond a reasonable doubt. When the instructions were completed, the jury began deliberations. The jury subsequently found defendant guilty of both counts of aggravated criminal sexual abuse.

¶ 43    As noted in the majority opinion, defendant argues on appeal that he was denied his right to due process and a fair trial when the trial judge told the jury pool during the jury selection process that the term "reasonable doubt" was for the jury to define.[1] Defendant asserts that the instruction was erroneous and that it ensured that the jury would apply a lesser standard than beyond a reasonable doubt in finding defendant guilty. Defendant asserts further that the error was compounded when the prosecutor reminded the jurors of the judge's instruction during rebuttal closing argument. Based upon this error alone, defendant asks that this court reverse his convictions and remand this case for a new trial. Defendant recognizes that this error was not properly preserved for appellate review in that it was neither objected to at trial nor raised in a posttrial motion (see *People v. Allen*, 222 Ill. 2d 340, 350 (2006)), but he asks this court to reach the merits of this issue, nevertheless, under the second prong of the plain error doctrine or because trial counsel was ineffective in failing to preserve this issue.

¶ 44    The State asserts first that the issue has been forfeited and should not be reached either as a matter of second-prong plain error or because of ineffectiveness of counsel. Alternatively, the State asserts that the trial court's instruction and the prosecutor's comment in closing argument on the issue of reasonable doubt did not constitute reversible error. Thus, the State argues that this court should affirm the judgment of the trial court.

¶ 45    The plain-error doctrine is a limited and narrow exception to the forfeiture rule that allows a reviewing court to consider unpreserved error when:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

See also *People v. Walker*, 232 Ill. 2d 113, 124 (2009); *People v. Herron*, 215 Ill. 2d 167, 177-87 (2005); Ill. S. Ct. R. 615(a). Under either prong of the plain-error doctrine, the burden of persuasion is on the defendant. *Walker*, 232 Ill. 2d at 124. If the defendant fails to satisfy that burden, the forfeiture of the issue must be honored. *Walker*, 232 Ill. 2d at 124. The first step in plain-error analysis is to determine whether an error occurred. *Walker*, 232 Ill. 2d at 124. To do so, a reviewing court must conduct a substantive review of the issue. *Walker*, 232 Ill. 2d at 125.

---

[1]On appeal, defendant does not make any distinction between his due process rights under the United States Constitution and his due process rights under the Illinois Constitution.

¶ 46    Although the propriety of jury instructions is generally reviewed on appeal for an abuse of discretion, when the issue is whether the applicable law was correctly conveyed by the instructions to the jury, the appropriate standard of review on appeal is *de novo*. *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 170 (2008). "The due process clause of the fourteenth amendment protects a defendant from conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Green*, 225 Ill. 2d 612, 622 (2007) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). To ensure a fair trial consistent with due process, "the trial court must instruct the jury on such basic matters as the elements of the offense, the presumption of innocence, and the burden of proof." *Green*, 225 Ill. 2d at 622. "A written instruction that informs the jury of the presumption of defendant's innocence and the State's burden of proving defendant guilty beyond a reasonable doubt is a time-honored and effective method of protecting a defendant's right to a fair trial, which is guaranteed by the due process clause of the fourteenth amendment." *People v. Layhew*, 139 Ill. 2d 476, 486 (1990).

¶ 47    As to the issue of instructions regarding reasonable doubt, the long-standing rule in Illinois was that the term "reasonable doubt" needed no further elaboration and that the trial court and counsel should not attempt to define reasonable doubt for the jury. See, *e.g.*, *Malmenato*, 14 Ill. 2d at 61; *Speight*, 153 Ill. 2d at 374. Applying that long-standing rule, Illinois courts had generally found that an attempt to define reasonable doubt was error, although in some instances, the courts went on to find that the error was not prejudicial to the defendant. See, *e.g.*, *Malmenato*, 14 Ill. 2d at 61; *Speight*, 153 Ill. 2d at 374-75.

¶ 48    However, when considering the due process implications of an instruction that defined reasonable doubt to the jury, the United States Supreme Court stated in *Victor v. Nebraska*:

        "The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. [Citation.] Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, [citation], the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. [Citation.] Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.' " *Victor*, 511 U.S. at 5 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)).

    Thus, the United States Supreme Court's ruling in *Victor* establishes that a jury instruction defining reasonable doubt is not automatically erroneous, contrary to the long-standing rule in Illinois, and that such an instruction does not automatically violate a defendant's right to a fair trial as guaranteed by the due process clause. See *Victor*, 511 U.S. at 5; *Green*, 225 Ill. 2d at 622 (adopting some of the language set forth in *Victor* but in a different context). Indeed, the Supreme Court noted in *Victor* that it had only found that a reasonable doubt instruction violated the due process clause one time in the past. See *Victor*, 511 U.S. at 5. According to the Supreme Court, due process is violated only if under the totality of the circumstances, there is a reasonable likelihood that the jury understood that the instructions allowed it to find the defendant guilty based upon a standard of proof that was less than beyond a reasonable doubt. See *Victor*, 511 U.S. at 5; *Green*, 225 Ill. 2d at 622; *Layhew*, 139

Ill. 2d at 486 (applying a totality of circumstances test, in a somewhat different context, to determine whether certain jury instructions denied the defendant a fair trial).

¶ 49     In the present case, I cannot draw such a conclusion. During the jury selection process and during the jury trial itself, the jury was told numerous times that defendant was presumed innocent, that the State bore the burden of proof, and that the jury was required to find defendant not guilty unless the State proved all of the elements of each count beyond a reasonable doubt. During closing arguments, defense counsel reiterated to the jury that the beyond a reasonable doubt standard was the highest standard of proof that was available under the law. Based upon the totality of the circumstances in this case, I do not believe that there was a reasonable likelihood that the jury understood that the jury instructions allowed it to find defendant guilty under a lesser standard of proof. See *Victor*, 511 U.S. at 6. The comments made by the trial judge during jury selection–that reasonable doubt was for the jury to define–and the prosecutor's mention of that comment in closing argument do not convince me otherwise, although I would recommend that a trial judge refrain from making such comments.

¶ 50     In reaching the conclusion that defendant in the instant case was not denied his right to due process or a fair trial, I must comment upon *People v. Turman*, a case which is heavily relied upon in the majority opinion. In *Turman*, under very similar circumstances, the First District of the Appellate Court found that the defendant was denied due process and a fair trial when the trial court, in response to a jury question during deliberations, gave the jury an instruction about reasonable doubt that was nearly identical to the comment made by the trial court during jury selection in the instant case. See *Turman*, 2011 IL App (1st) 091019, ¶¶ 19-27. Unfortunately, the opinion in *Turman* does not present any other facts regarding what the jury was told about reasonable doubt during the course of the trial. See *Turman*, 2011 IL App (1st) 091019, ¶¶ 19-27. Thus, I am unable either to agree or disagree with the appellate court's ruling in *Turman*, other than its determination that an erroneous instruction defining reasonable doubt constitutes second-prong plain error. See *Turman*, 2011 IL App (1st) 091019, ¶ 27; *Sullivan*, 508 U.S. at 281-82 (an erroneous reasonable doubt instruction constitutes structural error).

¶ 51     Because I would find that the trial judge's comments in this case did not constitute error, I would conclude that plain-error review does not apply to this issue and that the forfeiture of this issue must be honored. *Walker*, 232 Ill. 2d at 124. In addition, I would find that there is no indication in the record that defense counsel was ineffective in relation to this issue.

¶ 52     For the reasons stated, I respectfully concur in part and dissent in part from the majority's opinion.