# Illinois Official Reports

## Appellate Court

---

### *People v. Smith*, 2015 IL App (4th) 131020

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LORENZO C. SMITH, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-1020 |
| Filed | December 4, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 13-CF-827; the Hon. Heidi N. Ladd, Judge, presiding. |
| Judgment | Affirmed as modified and cause remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Rachel Moran, all of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Julia Reitz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and Aimee Sipes Johnson, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.<br>Justices Harris and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1    In August 2013, a jury convicted defendant, Lorenzo C. Smith, of aggravated battery to a person over the age of 60 (720 ILCS 5/12-3.05(d)(1) (West 2012)) and intimidation (720 ILCS 5/12-6 (West 2012)). The trial court thereafter sentenced defendant to concurrent prison sentences of five years on the aggravated battery charge and six years on the intimidation charge.

¶ 2    Defendant appeals, asserting (1) the jury instructions regarding aggravated battery inaccurately conveyed the law, (2) the State failed to prove him guilty of aggravated battery beyond a reasonable doubt, and (3) the trial court improperly responded to the jury's request for a definition of "reasonable doubt." For the following reasons, we affirm defendant's intimidation conviction, reduce his aggravated battery conviction to battery and affirm as modified, and remand for sentencing on the battery conviction.

¶ 3                                    I. BACKGROUND

¶ 4    In May 2013, the State charged defendant with two counts of aggravated battery to Thomas Shute, a person over the age of 60 (720 ILCS 5/12-3.05(d)(1) (West 2012)) (counts I and II); and one count of theft in excess of $500 (720 ILCS 5/16-1(a)(1)(A) (West 2012)) (count III). In July 2013, the State added a count of robbery (720 ILCS 5/18-1 (West 2012)) (count IV). In August 2013, the State charged defendant with intimidation of Shute (720 ILCS 5/12-6 (West 2012)) (count V).

¶ 5                                      A. Trial

¶ 6    In August 2013, defendant's jury trial commenced. Prior to jury selection, the State dismissed counts I, III, and IV. Thus, the State proceeded on one count of aggravated battery to a person over the age of 60 (count II) and intimidation (count V). During trial, the parties presented the following evidence.

¶ 7                                1. *Independent Witnesses*

¶ 8    Siblings Rolando Smith, Esque Ewing, and Lois Ewing testified they lived in the same apartment complex as defendant and Shute in Urbana, Illinois, and all three had befriended Shute to some extent. On May 24, 2013, Rolando, Esque, and Lois noticed Shute had cuts, bruises, and swelling on his face. After viewing Shute's injuries, Lois called the police on his behalf. Following defendant's arrest, Shute's bruising healed and he appeared to suffer no further injuries. All three testified they had noticed cuts and bruising to Shute's face on other occasions as well.

¶ 9    Officer Shaun Cook with the Urbana police department testified, on May 24, 2013, he spoke with Shute regarding his injuries. Officer Cook observed Shute had bruising and swelling on his face, which he photographed. The photographs were admitted into evidence. Following his conversation with Shute, Officer Cook arrested defendant.

¶ 10                                    2. *Shute*

¶ 11    Shute testified he was 63 years old. In August 2012, he suffered a stroke, which caused him decreased mobility, requiring him to use a cane or a motorized scooter. His left side has been

weakened. At the time he suffered his stroke, Shute lived in Chicago, Illinois. He then moved to Mt. Carmel, Illinois, where he resided with his now ex-wife.

¶ 12    Shute said he met defendant in Chicago in 2006. Defendant subsequently moved to Arizona, and during the intervening years, they spoke over the phone once or twice. In early 2013, when defendant expressed an interest in returning to the Chicago area, Shute invited him to stay with him in Mt. Carmel. Defendant thereafter moved in with Shute in early March 2013. When defendant moved into the home, he was unemployed, and he relied on Shute for his room and board.

¶ 13    When Shute's marriage deteriorated, he and defendant decided to move back to Chicago. According to Shute, he and defendant filled out an application for an apartment, but defendant's portion of the application was denied. The two subsequently decided to find housing in Champaign, Illinois. During their travels, Shute would allow defendant to use his debit card, so defendant knew Shute's personal identification number (PIN).

¶ 14    Shute testified, shortly before moving to the Champaign area, his relationship with defendant changed. According to Shute, defendant became violent when Shute discussed taking the Chicago apartment on his own. Defendant would call him names and curse at him. Following an April 2013 argument, Shute said defendant "backhanded me, knocked my glasses off and broke them." The slap caused him to bleed. At that point, Shute said he became afraid of defendant.

¶ 15    In the middle of April 2013, defendant and Shute moved into an apartment in Urbana. Shute signed the lease, whereas defendant's name was not listed on the lease. Shute intended to pay the rent from the disability check directly deposited into his Bank of America checking account each month. According to Shute, in exchange for defendant's agreement to assist him, Shute would pay defendant $250 per month. Initially, Shute thought defendant would stay only long enough to get Shute situated in the apartment, at which time defendant would obtain full-time employment and his own residence. However, Shute believed defendant was a good caregiver and allowed him to remain longer than he originally contemplated.

¶ 16    After moving into the Urbana apartment, Shute said defendant would become angry and strike him in the head and also verbally threaten him. He could not provide any specific dates, citing poor memory retention following his stroke. Shute would loan money to defendant, but defendant told Shute not to ask about repayment. According to Shute, if he asked defendant about the money, defendant would strike him. Shute also said defendant required him to pay an additional $200 per month for defendant's pocket money.

¶ 17    Shute testified, a couple of days before defendant's arrest, defendant hit him in the face and broke his glasses. Then, the day before defendant's arrest, Shute stated defendant punched him in the jaw and attempted to break his scooter. Shute identified the photographs taken by Officer Cook as depicting the injuries inflicted upon him by defendant the day prior to defendant's arrest. According to Shute, defendant also demanded Shute pay him $3,000, to be paid in increments of $750 per month, as recompense for defendant's caregiving services. Shute said he had already given defendant approximately $1,800 as encouragement to move out, which defendant spent on personal items. Additionally, Shute stated defendant threatened to kill him if he failed to pay. He further threatened to find Shute's daughter, who lived in Louisiana.

¶ 18    Following the State's presentation of evidence, defendant moved for a directed verdict, which the trial court denied.

3. *Defendant*

Defendant testified he met Shute in 2006. Defendant thereafter moved out of state, first to Georgia, then to Arizona. During that period of three to four years, he spoke with Shute approximately three times.

When defendant decided to move back to Chicago, he reached out to Shute, at which time he learned Shute had suffered a stroke. Because defendant wanted to return to Illinois and Shute needed a caregiver, Shute invited defendant to stay with him. The two of them attempted to obtain an apartment in Chicago, but defendant said his application was denied due to bad credit. The two eventually moved into an apartment in Urbana.

Defendant denied striking Shute, breaking his glasses, or threatening him in any way. Defendant conceded he argued with Shute over money when Shute wanted to stop paying for defendant's caregiving assistance, but the argument never became physical. He said Shute told him he obtained his cuts and bruises by falling in their apartment, which was not handicap accessible. Defendant stated he remained with Shute despite their strained relationship because he had no job and nowhere to go.

After the defense rested, defendant renewed his motion for a directed verdict, which the trial court again denied.

B. Jury Instructions and Deliberations

As part of its jury instructions, the State tendered Illinois Pattern Jury Instructions, Criminal, Nos. 11.15 and 11.16 (4th ed. 2000) (hereinafter, IPI Criminal 4th) regarding the offense of aggravated battery to a person over the age of 60. Instruction No. 11.15 read, "A person commits the offense of aggravated battery when he knowingly and by any means makes physical contact of an insulting or provoking nature with another person, and the other person is an individual 60 years of age or older." See IPI Criminal 4th No. 11.15. Instruction No. 11.16, as provided to the jury, read:

> "To sustain the charge of aggravated battery, the State must prove the following propositions:
>
> First Proposition: That the defendant knowingly made physical contact of an insulting or provoking nature with [Shute]; and
>
> Second Proposition: That at the time defendant did so, [Shute] was an individual of 60 years of age or older.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

See IPI Criminal 4th No. 11.16. When tendered these jury instructions, defendant stated he had "no objection" to either instruction, and both were given to the jury.

During closing argument, the State addressed the second proposition by stating, "[Shute] told you his birthday, November 22, 1949, and he's 63 years old now and was 63 on the days that all this occurred. So he's over 60." This constituted the State's sole discussion of Shute's age under the second proposition.

- 4 -

¶ 27    After approximately one hour of deliberations, the jurors submitted a question reading, "Could we get a definition of 'beyond a reasonable doubt?' " The trial court suggested the following response: "The definition of reasonable doubt is for the jury to determine. Please review all of your instructions as previously given and continue with your deliberations." When asked if that response was agreeable, both parties stated, "Yes, Your Honor," and the court sent its response back to the jury.

¶ 28    Following deliberations, the jury found defendant guilty on both counts–aggravated battery to a person over the age of 60 and intimidation.

## C. Sentencing

¶ 30    In August 2013, defendant filed a motion for acquittal or, in the alternative, a new trial, arguing, in part, the State failed to prove him guilty beyond a reasonable doubt. In October 2013, the trial court denied the motion. The court thereafter sentenced defendant to concurrent prison sentences of five years on the aggravated battery charge and six years on the intimidation charge.

¶ 31    This appeal followed.

## II. ANALYSIS

¶ 33    On appeal, defendant argues (1) the jury instructions regarding aggravated battery inaccurately conveyed the law, (2) the State failed to prove him guilty of aggravated battery beyond a reasonable doubt, and (3) the trial court improperly responded to the jury's request for a definition of "reasonable doubt." We address these arguments in turn.

## A. Jury Instructions and the Sufficiency of the Evidence

¶ 35    Defendant concedes the State proved him guilty of battery but argues the State failed to prove him guilty of aggravated battery beyond a reasonable doubt. To properly address this assertion, we must begin by discussing the statutory language and corresponding jury instructions defining the State's burden of proof as to the aggravated battery count.

## 1. *Jury Instructions*

¶ 37    In this case, the State presented its case in accordance with IPI Criminal 4th Nos. 11.15 and 11.16, the instructions which define aggravated battery to a person over the age of 60. However, those instructions became effective prior to substantive changes to the statutory language. The interpretation of the statutory provisions is subject to *de novo* review. *People v. Jasoni*, 2012 IL App (2d) 110217, ¶ 12, 974 N.E.2d 902.

¶ 38    IPI Criminal 4th Nos. 11.15 and 11.16 reflect the law as it existed when those instructions were published in 2000. At that time, the pertinent statutory definition of aggravated battery to a person over the age of 60 required the State to prove the defendant "[k]nowingly and without legal justification and by any means cause[d] bodily harm to an individual of 60 years of age or older." Pub. Act 90-115, § 5 (eff. Jan. 1, 1998) (amending 720 ILCS 5/12-4(b)(10) (West 1996)). The corresponding jury instructions required the State to prove beyond a reasonable doubt the defendant committed a battery and "at the time [the] defendant did so, [the victim] was an individual of 60 years of age or older." IPI Criminal 4th Nos. 11.15, 11.16. Consistent with those instructions and the statutory language, our courts determined the State was not

required to prove the defendant had knowledge of the victim's age at the time of the offense. *People v. White*, 241 Ill. App. 3d 291, 302, 608 N.E.2d 1220, 1229 (1993) (citing *People v. Jordan*, 102 Ill. App. 3d 1136, 1139, 430 N.E.2d 389, 391 (1981)).

¶ 39    However, effective in 2006, the legislature amended the aggravated battery statute to state a defendant commits an aggravated battery against a person over the age of 60 when he knowingly commits a battery and "[k]nows the individual harmed to be an individual of 60 years of age or older." Pub. Act 94-327, § 5 (eff. Jan. 1, 2006) (amending 720 ILCS 5/12-4(b)(10) (West 2004)). The statute has since been renumbered. See 720 ILCS 5/12-3.05(d)(1) (West 2012). The new language adopted in Public Act 94-327 added an element to the offense requiring the State to prove the defendant *knew* the individual harmed was 60 years of age or older, an element which is not reflected in the present set of jury instructions. *Jasoni*, 2012 IL App (2d) 110217, ¶ 16, 974 N.E.2d 902. In short, IPI Criminal 4th Nos. 11.15 and 11.16 do not accurately convey the present law regarding the charge of aggravated battery to a person over the age of 60.

¶ 40    Because this amendment provided substantive changes to an element of the offense, we prevail upon the Illinois Supreme Court Committee on Pattern Jury Instructions in Criminal Cases to consider updating IPI Criminal 4th Nos. 11.15 and 11.16 to reflect the 2006 amendment to the aggravated battery statute.

¶ 41    Ordinarily, the next step in the analysis would be to determine whether the error in the jury instructions requires reversal for a new trial on those charges. However, because we conclude the State failed to prove the aggravating factor–that defendant knew Shute to be over the age of 60–beyond a reasonable doubt, we need not examine whether the jury-instruction error requires reversal for a new trial.

¶ 42                              2. *Reasonable Doubt*

¶ 43    In a jury trial, the State bears the burden of proving the defendant guilty of every element of the offense beyond a reasonable doubt. *People v. Maggette*, 195 Ill. 2d 336, 353, 747 N.E.2d 339, 349 (2001). "A reviewing court will not set aside a criminal conviction on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt." *Id*. In other words, where a jury finds a defendant guilty, our inquiry is whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278, 818 N.E.2d 304, 307 (2004).

¶ 44    The sole evidence presented with respect to Shute's age was his own testimony that he was 63 years of age. Nevertheless, the State asserts the relationship between defendant and Shute provides sufficient circumstantial evidence for the jury to find defendant knew of Shute's age. *Jasoni*, 2012 IL App (2d) 110217, ¶ 20, 974 N.E.2d 902; see also *People v. Patel*, 2013 IL App (4th) 121111, ¶ 54, 996 N.E.2d 1114. "An admission by a defendant is not required for the trier of fact to conclude that a defendant had knowledge of something." *Jasoni*, 2012 IL App (2d) 110217, ¶ 20, 974 N.E.2d 902. Such evidence "may be established by evidence of the acts, statements, or conduct of the defendant, as well as the surrounding circumstances." *People v. Jaynes*, 2014 IL App (5th) 120048, ¶ 46, 11 N.E.3d 431. The evidence must sufficiently support an inference of knowledge based on established facts rather than pyramided on

intervening inferences. *People v. Lissade*, 403 Ill. App. 3d 609, 613, 935 N.E.2d 1041, 1044 (2010).

¶ 45    In support of its position the circumstantial evidence was sufficient for a conviction, the State draws several inferences. First, the State infers Shute and defendant shared a close relationship because of their long-term friendship and status as roommates at the time the offense was committed. Second, the State infers defendant must have known Shute's age because they filled out joint rental applications. Third, the State asserts defendant's role as Shute's caregiver created an inference that he would have access to information regarding Shute's age. Finally, the State infers Shute's willingness to provide his debit card PIN to defendant suggests a trusting relationship wherein the two would have shared their ages with one another.

¶ 46    In making these arguments, the State has pyramided intervening inferences in an attempt to create evidence not otherwise contained in the record. Nothing in the record suggests defendant was aware of Shute's age. Shute provided no testimony he told defendant his age or birth date, and during the brief period in which Shute and defendant were roommates, Shute did not celebrate a birthday. Additionally, the record fails to show defendant reviewed Shute's portion of the rental applications, medical records, or any other documents in the apartment which might have reflected Shute's age or birth date.

¶ 47    Operating on the mistaken belief that it needed only to prove Shute was over the age of 60, the State presented no evidence from which a jury could infer *defendant* knew Shute was over the age of 60. Thus, the State failed to meet its burden in proving defendant knew Shute was over the age of 60, the element which distinguishes a battery (720 ILCS 5/12-3 (West 2012)) from an aggravated battery (720 ILCS 5/12-3.05(d)(1) (West 2012)).

¶ 48    Defendant concedes he committed the lesser-included offense of battery, and our review of the record demonstrates the evidence–the injuries to Shute's face and witness testimony regarding Shute's injuries–was sufficient to support a conviction for battery. Accordingly, pursuant to our powers under Illinois Supreme Court Rule 615(b)(3) (eff. Jan. 1, 1967), we order defendant's aggravated battery conviction reduced to a conviction on the lesser-included offense of battery (720 ILCS 5/12-3(a) (West 2012)) and remand for sentencing on the offense of battery. See *People v. Lewis*, 327 Ill. App. 3d 285, 292, 763 N.E.2d 422, 427 (2002).

¶ 49                    B. Definition of "Reasonable Doubt"

¶ 50    As to the remaining count of intimidation, defendant asserts the trial court erred in answering the jury's request for a definition of "reasonable doubt" with "[t]he definition of reasonable doubt is for the jury to determine." Our review of whether a court's jury instructions accurately conveyed the law is *de novo*. *People v. Pierce*, 226 Ill. 2d 470, 475, 877 N.E.2d 408, 410 (2007).

¶ 51    Defendant asserts the trial court's response to the jury's question constituted reversible error, relying on *People v. Turman*, 2011 IL App (1st) 091019, 954 N.E.2d 845; *People v. Franklin*, 2012 IL App (3d) 100618, 970 N.E.2d 1247; and *People v. Downs*, 2014 IL App (2d) 121156, 11 N.E.3d 869. However, during the pendency of this appeal, the supreme court issued its decision in *People v. Downs*, 2015 IL 117934, which abrogated the aforementioned cases. As defendant acknowledges in his reply brief, the supreme court in *Downs* held the trial court correctly responded to the jury's request for a definition of reasonable doubt by stating, " 'We cannot give you a definition, it's yours to define.' " *Id*. ¶¶ 6, 32. As defendant concedes

in his reply brief, the court in this case responded almost identically, and the supreme court's decision in *Downs* controls. Accordingly, we conclude the court did not err in its response to the jury's request for a definition of "reasonable doubt."

¶ 52                                    III. CONCLUSION

¶ 53        For the foregoing reasons, we vacate defendant's conviction and sentence for aggravated battery, enter a conviction for the misdemeanor offense of battery, and remand for sentencing on the battery conviction. We otherwise affirm the trial court's judgment. As part of our judgment, because the State successfully defended a portion of this appeal, we award the State its $50 statutory assessment against defendant as costs of this appeal. See *People v. Smith*, 133 Ill. App. 3d 613, 619-20, 479 N.E.2d 328, 333 (1985) (citing *People v. Nicholls*, 71 Ill. 2d 166, 178, 374 N.E.2d 194, 199 (1978)).

¶ 54        Affirmed as modified and cause remanded with directions.